No. 89,432

In the Matter of the APPLICATION OF CENTRAL ILLINOIS PUBLIC SERVICES COMPANY, *et al.*, for Exemption from Ad Valorem Taxation in Meade County, Kansas.

(78 P.3d 419)

 Opinion filed October 31, 2003.

*Linda A. Terrill*, of Neill, Terrill & Embree, of Overland Park, argued the cause, and *Benjamin J. Neill*, of the same firm, was on the brief for appellant.

*S. Lucky DeFries*, of Coffman, DeFries & Nothern, of Topeka, argued the cause, and *Jeffrey A. Wietharn*, of the same firm, was with him on the brief for appellee Village of Morton.

*C. Michael Lennen*, of Morris, Laing, Evans, Brock & Kennedy, of Wichita, argued the cause, and *Richard D. Greene*, of the same firm, was on the brief for appellees Central Illinois Public Service Company, Union Electric Company, and Missouri Gas Energy.

*William E. Waters*, of the Kansas Department of Revenue, argued the cause and was on the brief for appellee Kansas Department of Revenue.

The opinion of the court was delivered by

LUCKERT J., Appellees, who are in the business of selling and distributing natural gas in states other than Kansas, own natural gas which is stored by a contractor in an underground facility in Meade County, Kansas. Appellees sought an exemption under Article 11, § 1 of the Kansas Constitution (2002 Supp.), which exempts merchants' and manufacturers' inventories from Kansas property tax. The State Board of Tax Appeals (BOTA) granted the exemption, ruling that the appellees' natural gas inventory stored in Kansas was merchants' inventory and that the appellees were

not subject to the constitutional provision which denies public utilities the merchants' inventory exemption. BOTA applied the definition of "public utilities" found in K.S.A. 2002 Supp. 79-5a01, finding that appellees did not meet the definition because they do not transport, distribute, sell, trade, or otherwise dispose of natural gas within Kansas nor are they in the business of storing gas in Kansas. Meade County appeals.

We affirm BOTA.

The parties stipulated to many of the facts, which were accepted by BOTA and set out at length in its order. Highly summarized, the stipulated facts were as follows:

Appellees Central Illinois Public Service Company, Union Electric Company, and Missouri Gas Energy are public utilities operating in Illinois and/or Missouri where they are engaged in the business of selling and/or distributing natural gas. Appellee Village of Morton is an Illinois municipal corporation which operates a gas system for the benefit of its residents. Appellee Municipal Gas Commission of Missouri is a political subdivision of the state of Missouri which purchases and distributes needed natural gas supplies on behalf of its member cities, towns, and villages.

None of the appellees deliver, sell, trade, or otherwise dispose of natural gas within the state of Kansas; therefore, they are not state-assessed public utilities under K.S.A. 2002 Supp. 79-5a01. All of the appellees purchase natural gas from various producers and marketers and take title to the gas upon delivery to the interstate gas system owned and operated by Panhandle Eastern Pipe Line Company (Panhandle). Pursuant to contract, some of the gas purchased by the appellees is placed in storage in Meade County by Panhandle for withdrawal on a seasonal and scheduled basis. Under federal regulations, the appellees cannot designate the storage location and have no specific knowledge of the location.

When Meade County assessed and taxed appellees' stored natural gas inventories for the tax year 2000, appellees filed tax exemption applications and tax grievances with BOTA. The Director of Property Valuation (PVD) was joined in the actions as a necessary party. After a hearing, BOTA ruled that because appellees are not public utilities as defined by K.S.A. 2002 Supp. 79-5a01 their

natural gas inventories are exempt from taxation under K.S.A. 79-201m as merchants' inventory. BOTA did not address the appellees' alternative arguments that their natural gas inventories were eligible for the "freeport" exemption pursuant to K.S.A. 79-201f or the municipalities' exemption pursuant to Article 11, § 1(b) of the Kansas Constitution (2002 Supp.).

BOTA denied Meade County's petition for reconsideration, and Meade County timely appealed. The appeal was transferred to this court on its own motion pursuant to K.S.A. 20-3018(c).

*Did BOTA Err in Determining that Appellees Were Not Public Utilities and Therefore the Public Utility Exception to the Merchants' Inventory Exemption Did Not Apply?*

Meade County argues that BOTA erroneously interpreted the public utility exception provided for in the merchants' and manufacturers' inventory property tax exemption provision of Article 11, § 1 (2002 Supp.). Specifically, Meade County argues that by applying statutory definitions of "public utility" to Article 11 of the Kansas Constitution (2002 Supp.) BOTA impermissibly limited the scope of the constitutional provision that denies the merchants' inventory exemption to public utilities. Instead of relying upon the statutory definition of "public utility," Meade County contends that a common understanding of "public utility" should be applied and that under this standard appellees would be viewed as public utilities since they distribute, sell, or trade natural gas in their home states. Further, Meade County argues that the legislators and voters intended for public utility inventory to be taxed, and BOTA's ruling contravenes this intent.

The standard of review this court must apply in considering these arguments is defined by the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions. K.S.A. 74-2426(c); see *In re Tax Application of Lietz Constr. Co.*, 273 Kan. 890, 896, 47 P.3d 1275 (2002). As applicable to this case, the KJRA provides that this court may grant relief from an order of BOTA only if it determines that BOTA has erroneously interpreted or applied the law, or that BOTA's action, or the statute upon which its action is based, is unconstitutional. K.S.A. 77-621(c)(1), (4).

This court has further stated: "BOTA is a specialized agency that exists to decide taxation issues, and its decisions are given great weight and deference when it is acting in its area of expertise. However, if BOTA's interpretation is erroneous as a matter of law, appellate courts will take corrective steps. [Citation omitted.]" *In re Appeal of Intercard, Inc.*, 270 Kan. 346, 349, 14 P.3d 1111 (2000).

When construing tax statutes, statutes that impose the tax are to be construed strictly in favor of the taxpayer. Tax exemption statutes, however, are to be construed strictly in favor of imposing the tax and against allowing the exemption for one who does not clearly qualify. *Presbyterian Manors, Inc. v. Douglas County*, 268 Kan. 488, 492, 998 P.2d 88 (2000).

The provision construed by BOTA and at issue in this case is Article 11, § 1 of the Kansas Constitution (2002 Supp.). Article 11, § 1 was amended in 1986 to create a new exemption from property taxation for merchants' and manufacturers' inventory. L. 1985, ch. 364, sec. 1. In 1988, the legislature enacted K.S.A. 1988 Supp. 79-201m to implement the exemption. At that time, the statute reiterated that merchants' and manufacturers' inventory was exempt from all property or ad valorem taxes and defined the terms "merchant," "manufacturer," and "inventory." There was no mention of public utilities. L. 1988, ch. 375, sec. 2.

The issue of whether the exemption applied to the inventory of public utilities reached this court in 1990 when we determined that natural gas owned by public utilities and stored for resale came within the exemption for merchants' inventory. *Colorado Interstate Gas Co. v. Board of Morton County Comm'rs*, 247 Kan. 654, 802 P.2d 584 (1990). This court found that the appellant public utilities were merchants under K.S.A. 79-201m because they were in the business of buying and selling natural gas and severed natural gas was tangible personal property. 247 Kan. at 661. Although we recognized that the 1986 constitutional amendment was not intended to exempt public utility inventories from taxation, we nonetheless found that the clear language of the amendment had that effect.

"The problem here is that in enacting the proposed constitutional amendment the legislature determined the size of the mesh in the net and the requisite num-

ber of voters approved the mesh size. The mesh size is thus fixed in the constitution. The fact that unintended varieties of fish may pass through the mesh has little bearing on anything.

"Under the circumstances, this court can only apply the clear language of the amendment. . . .

"In the case before us, we are primarily concerned with the amendment itself and what persons of common understanding would imply from the words used therein." 247 Kan. at 662.

During the pendency of the *Colorado Interstate Gas* proceedings, the legislature amended K.S.A. 1988 Supp. 79-201m, effective December 8, 1989, to make the merchants' and manufacturers' inventory exemption inapplicable to the tangible personal property of a public utility as defined by K.S.A. 79-5a01. We noted the amendment in reaching our decision in the *Colorado Interstate Gas* case, but because the case involved BOTA decisions which predated the statutory amendment, we did not address the validity or effect of the amendment. 247 Kan. at 658-59.

In 1992, Kansas voters approved another amendment to Article 11, § 1 of the Kansas Constitution (2002 Supp.). The amendment denied public utilities the merchants' and manufacturers' inventory exemption and, thus, made the constitution consistent with the previously adopted statute, K.S.A. 1988 Supp. 79-201m. The 1992 amendment read as follows:

"*(b)* All property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, farm machinery and equipment, *merchants' and manufacturers' inventories, other than public utility inventories included in subclass (3) of class 2* . . . livestock, and all household goods and personal effects not used for the production of income, shall be exempted from property taxation." (Emphasis added to show amendment.) L. 1992, ch. 342, sec. 1.

Subclass (3) of class 2 consisted of "[p]ublic utility tangible personal property including inventories thereof, except railroad personal property . . . ." At that time and today, the statute enabling the taxation upon the various classifications of property restated that subclass (3) of class 2 was public utility tangible property and added: "As used in this paragraph, 'public utility' shall have the meaning ascribed thereto by K.S.A. 79-5a01 and amendments thereto." K.S.A. 79-1439(b)(2)(C).

K.S.A. 2002 Supp. 79-5a01 defines "public utility" in relevant part as follows:

"(a) As used in this act, the terms 'public utility' or 'public utilities' shall mean every individual, company, corporation, association of persons, lessees or receivers that now or hereafter are in control, manage or operate a business of:

. . . .

"(4) transporting or distributing *to, from, through or in this state* natural gas, oil or other commodities in pipes or pipelines, or engaging primarily in the business of storing natural gas in an underground formation." (Emphasis added.) K.S.A. 2002 Supp. 79-5a01.

Panhandle met this definition of public utility and so paid the property tax on the stored natural gas until tax year 1999. Then, the Federal Energy Regulatory Commission (FERC) issued FERC Order 636 which unbundled the interstate pipeline industry and prohibited Panhandle from owning the stored gas. Under FERC Order 636, title to the severed natural gas passed to the customer upon delivery of the gas to the storage system. Consequently, Panhandle stopped paying tax on the stored gas.

Once FERC Order 636 was effective, title to the natural gas lay with the appellees, who are not public utilities as defined in K.S.A. 2002 Supp. 79-5a01. The parties stipulated that the appellees are not state-assessed public utilities pursuant to this statute. Additionally, based upon the stipulated facts regarding the appellees' business practices, BOTA found that none of the appellees met the statutory definition of public utilities contained in K.S.A. 2002 Supp. 79-5a01. The plain language of the statute requires that a company be engaged in the business of transporting or distributing natural gas to, from, or within the state of Kansas, or that a company be engaged in storing natural gas in an underground formation. Appellees did none of these things, their only connection with Kansas being that they contracted with Panhandle to store their natural gas.

Because the appellees did not meet the statutory definition of public utilities, the appellees sought application of the merchants' inventory exemption. After hearing the parties' arguments and considering the history of the provisions, BOTA concluded "that a construction of the term 'public utilities' contained within the con-

stitutional amendment must be consistent with other statutes in effect at the time of the amendment's proposal and passage." BOTA concluded it would apply the definition of "public utilities" found in K.S.A. 2002 Supp. 79-5a01, stating that it "declines to construe the term 'public utilities' as contained in the constitutional amendment in a manner inconsistent with well-established legislative definition."

In making its argument that BOTA should not apply the definition of "public utility" in K.S.A. 2002 Supp. 79-5a01, Meade County cites *Colorado Interstate Gas* wherein this court stated that the constitutional provision exempting merchants' and manufacturers' inventory from taxation is self-executing. The court quoted 16 Am. Jur. 2d, Constitutional Law § 139 *et seq.*, which states:

" 'It is clear that legislation which would defeat or even restrict a self-executing mandate of the constitution is beyond the power of the legislature. Also, the legislature is neither required nor permitted to enact laws purporting to confer rights in excess of and different from those contemplated by the constitution. A liability imposed by a self-executing provision is absolute and not subject to legislative enlargement or lessening or restriction as to manner of enforcement.' " 247 Kan. at 659-60.

Relying upon this holding, Meade County argues the legislature could not limit the definition of "public utility" more narrowly than the meaning the term would have to people of common understanding. What this argument ignores is that, although the exemption of merchants' and manufacturers' inventory is self-executing, the exclusion of public utility inventories from the exemption refers to those "public utility inventories included in subclass (3) of class 2." Kan. Const. art. 11, § 1(b) (2002 Supp.); K.S.A. 79-201m. Article 11, § 1(a) provides that "tangible personal property shall be further classified into six subclasses, *shall be defined by law for the purpose of subclassification* and assessed uniformly as to subclass . . . ." (Emphasis added.)

Accordingly, the legislature does have some authority to define what constitutes "public utility tangible personal property." Even so, as we stated in *Colorado Interstate Gas*, the legislature's definition must conform to the commonly understood meaning of the term.

"A constitutional provision is not to be narrowly or technically construed, but its language should be interpreted to mean what the words imply to men of common understanding. [Citation omitted.] A constitution should not be interpreted in any refined or subtle sense, but should be held to mean what the words imply to the common understanding of men. [Citation omitted.] When interpreting the constitution, each word must be given due force and appropriate meaning. [Citation omitted.]" 247 Kan. at 660.

This court applied this rule of construction in *State ex rel. Stephan v. Parrish*, 256 Kan. 746, 762, 887 P.2d 127 (1994), in considering whether statutes creating "instant bingo" were unconstitutional. In 1974, Kansas voters adopted a constitutional amendment to permit games of bingo to be conducted by certain nonprofit organizations. The 1975 legislature then enacted enabling legislation defining the term "bingo." In 1993, the legislature enacted a bill authorizing "instant bingo."

The State argued that instant bingo was not a game of bingo as intended by voters in 1974; rather, it was merely another form of lottery prohibited under the Kansas Constitution. This court agreed, holding that the legislative definition of the constitutional term "games of bingo" must bear a reasonable and recognizable similarity to generally accepted definitions and the common understanding of the term by the people of Kansas. This court referred to the legislature's definition of bingo in the 1975 enabling legislation, stating:

"The legislature . . . defined bingo in 1975 in K.S.A. 1975 Supp. 79-4701(a), and in doing so carefully described traditional or call bingo. It is logical to assume that in doing so, the legislature, representing the people of Kansas, defined bingo as it was commonly understood by the voters when they approved Art. 15, § 3a of the constitution." 256 Kan. at 761.

Similarly, in this case the legislature, representing the people of Kansas, defined public utility to include only those entities doing business in Kansas. In contrast to the situation at issue in *Parrish*, such a definition was not an attempt to avoid a constitutional provision by defining a constitutional term in a manner different from the common understanding.

Other rules of constitutional construction applied in *Colorado Interstate Gas* also support BOTA's construction of the provision.

" 'In ascertaining the meaning of a constitutional provision, the primary duty of the courts is to look to the intention of the makers and adopters of that provision.' Syl. ¶ 2.

" 'In interpreting and construing the constitutional amendment, the court must examine the language used and consider it in connection with the general surrounding facts and circumstances that cause the amendment to be submitted.' Syl. ¶ 3." 247 Kan at 660 (quoting *Board of Wyandotte County Comm'rs v. Kansas Ave. Properties*, 246 Kan. 161, 786 P.2d 1141 [1990]).

In determining whether the term "merchants or manufacturers" as used in the 1986 constitutional amendment was intended to encompass public utilities, this court stated: "Realistically speaking, it is highly unlikely that many 1986 Kansas voters spent much time meditating on whether public utilities could come within the term 'merchants or manufacturers.' The test is, however, what meaning people of common understanding would give to the words in question." 247 Kan. at 660.

Similarly, in this case, it is unlikely that many 1992 Kansas voters considered whether the term "public utilities" included only instate companies or also out-of-state companies. It also seems unlikely that the legislature considered the issue. Nothing in the legislative history of the 1992 constitutional amendment indicates that the legislature considered the problem of whether nonresident public utility inventory stored in Kansas should be taxed. In fact, the problem was nonexistent until after that constitutional amendment was adopted. However, the legislature had consistently utilized the definition in K.S.A. 2002 Supp. 79-5a01.

Additionally, when we consider the language in connection with the general surrounding facts and circumstances that caused the amendment to be submitted we conclude that it was intended that the constitutional provision would be consistent with the statutes which defined "public utility."

Furthermore, "[a] statute and pertinent constitutional provisions must be construed together with a view to make effective the legislative intent rather than to defeat it." *Hunt v. Eddy*, 150 Kan. 1, 5, 90 P.2d 747 (1939). In this case, the only way of ascertaining legislative intent is to look at the statutes in existence at the time the constitutional amendment was proposed and adopted. As per-

suasively argued by appellee and concluded by BOTA, all of those statutes referred to public utilities as defined by K.S.A. 2002 Supp. 79-5a01.

Thus, the various rules of constitutional construction lead to the conclusion that Meade County's proposed construction should be rejected and the term "public utilities" found in Article 11 of the Kansas Constitution (2002 Supp.) should be construed in a manner consistent with K.S.A. 79-201m, K.S.A. 79-1439, and K.S.A. 2002 Supp. 79-5a01. Thus, BOTA did not err in concluding that appellees were eligible for exemption relief pursuant to K.S.A. 79-201m and that the appellees' stored natural gas inventory is exempt from property taxation.

*Does BOTA's Interpretation Result in an Equal Protection Violation?*

Meade County next argues that BOTA cannot do by interpretation what the legislature could not do directly, that is, treat members of the same class differently. Under BOTA's interpretation of the law, the natural gas inventory of Kansas public utilities is taxed, while the natural gas inventory of non-Kansas public utilities is not taxed. Meade County argues that this unequal treatment violates the uniform and equal rate of assessment and taxation clause of Article 11, § 1 of the Kansas Constitution (2002 Supp.).

An initial question is whether Meade County has standing to raise an equal protection challenge. One who challenges the validity of state taxation as violating the Equal Protection Clause "cannot rely on theoretical inequalities, or such as do not affect him, but must show that he is himself affected unfavorably by the discrimination of which he complains." *Roberts & Schaeffer Co. v. Emmerson*, 271 U.S. 50, 55, 70 L. Ed. 827, 46 S. Ct. 375 (1926). Clearly, if an equal protection violation exists, it would be tax-paying Kansas public utilities that have standing to bring such a challenge. And, if such a challenge were to succeed, the remedy would be to relieve Kansas public utilities from paying the tax, not to impose a tax on nonresident utilities for which the statutory taxation scheme does not provide.

However, we also recognize that this court has a duty to construe a statute as constitutionally valid if there is any reasonable way to do so. *In re Tax Application of Lietz Constr. Co.*, 273 Kan. 890, Syl. ¶ 8, 47 P.3d 1275 (2002). Therefore, we will consider the argument although we are hindered in doing so because, beyond citing *State ex rel. Stephan v. Parrish*, 257 Kan. 294, 891 P.2d 445 (1995), Meade County offers little analysis in support of this argument and appellees do not address the argument.

In *Parrish*, this court quoted *Topeka Cemetery Ass'n v. Schnellbacher*, 218 Kan. 39, 542 P.2d 278 (1975), as follows:

" 'We have consistently held that where public property is not involved, a tax exemption must be based upon the use of the property and not on the basis of ownership alone. The reason for the rule is that a classification of private property for tax purposes based solely upon owners unlawfully discriminates against one citizen in favor of another and therefore is a denial of equal protection of the law.' " 257 Kan. at 303.

However, if there is a rational basis for the disparate treatment, other than simply ownership, classification of property based solely upon ownership would pass constitutional muster. See *Parrish*, 257 Kan. at 302-04. Furthermore, it is unnecessary to determine the actual legislative purpose; rather, "if any state of facts reasonably may be conceived to justify the alleged statutory discrimination, the statute will not be set aside as a violation of equal protection. [Citation omitted.]" *Leiker v. Gafford*, 245 Kan. 325, 364, 778 P.2d 823 (1989), *overruled in part on other grounds Martindale v. Terry*, 250 Kan. 621, 629, 829 P.2d 561 (1992).

There is no basis to discern the legislative purpose since, as previously discussed, there is no reason the legislature would have contemplated the distinction between Kansas and out-of-state utilities. Therefore, we consider whether any state of facts reasonably may be conceived to justify the alleged statutory discrimination.

One possible rational basis for favorable tax treatment of non-residents was recognized by the United States Supreme Court in *Allied Stores of Ohio v. Bowers*, 358 U.S. 522, 3 L. Ed. 2d 480, 79 S. Ct. 437 (1959). This court cited to *Bowers* in *State ex rel. Tomasic v. Kansas City, Kansas Port Authority*, 230 Kan. 404, 636

P.2d 760 (1981), for a statement of the principles governing state taxation and equal protection.

"In [*Bowers*], an Ohio statute exempted from ad valorem taxation merchandise warehoused by nonresidents if it were held in a storage warehouse for storage only. Plaintiff, a resident who operated several department stores and maintained warehouses for his merchandise, claimed denial of equal protection. In rejecting the challenge, the Supreme Court noted the states are subject to the Equal Protection Clause in the exercise of their taxing power but enjoy wide discretion nonetheless. The court observed the Equal Protection Clause 'imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation.' 358 U.S. at 526. The state taxation scheme must have a rational basis with classifications based on differences having a fair and substantial relation to the object of the legislation. In *Allied Stores of Ohio* the court found 'a statute which encourages the location within the State of needed and useful industries by exempting them, though not also others, from its taxes is not arbitrary and does not violate the Equal Protection Clause of the Fourteenth Amendment.' 358 U.S. at 528." 230 Kan at 425.

The *Bowers* rationale could be applied in Kansas. See *State ex rel. Tomasic v. City of Kansas City*, 237 Kan. 572, Syl. ¶ 13, 701 P.2d 1314 (1985) (holding that the uniform and equal rate of assessment and taxation provision of Article 11, § 1 (2002 Supp.) "is, in principle and effect, substantially identical to the principle of equality embodied in the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.")

Also, because the FERC regulations and appellees' contract with Panhandle give appellees little or no control over where the severed natural gas is stored or for how long, there is a rational basis to determine that it would be unfair and, at least arguably, a potential violation of the Commerce Clause to tax the severed natural gas of a public utility that has no dealings with Kansas consumers.

Because we can conceive of several rational bases for the distinction between utilities regulated in Kansas and those which are not, we reject Meade County's argument.

The parties raise other arguments relating to the power of Meade County to assess the property, the application of the "freeport" exemption contained in K.S.A. 79-201f, application of the exemption for municipalities, and the constitutionality of the public utilities exclusion to the merchants' and manufacturers' exemption.

However, because we affirm BOTA's ruling that appellees are not public utilities as defined by K.S.A. 2002 Supp. 79-5a01 and that their natural gas inventories are therefore exempt from taxation under K.S.A. 79-201m as merchants' inventory, none of the remaining arguments need be addressed.

Affirmed.