No. 116,607

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Equalization Appeal of
TARGET CORPORATION,
for the Year 2015 in
Sedgwick County, Kansas.

SYLLABUS BY THE COURT

1.

The Kansas Judicial Review Act, K.S.A. 77-601 et seq., governs appellate review of Kansas Board of Tax Appeals rulings.

2.

As a general rule in construing tax statutes, provisions which impose a tax are to be construed strictly in favor of the taxpayer.

3.

Each parcel of real property shall be appraised at its fair market value in money, the value thereof to be determined by the appraiser from actual view and inspection of the property.

4.

"Fair market value" means the amount in terms of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting for property in an open and competitive market, assuming that the parties are acting without undue compulsion.

5.

Appraisals for ad valorem taxation purposes must be performed in accordance with the Uniform Standards of Professional Appraisal Practice.

6.

For appraisal purposes, counties can no longer use carryover values to determine a current year's valuation.

7.

When valuing property, an appraiser may determine the difference between the value of the property under a hypothetical vacant condition and its value as occupied in order to isolate the value of the taxable real estate separate and apart from the business being conducted on it.

Appeal from the Board of Tax Appeals. Opinion filed December 29, 2017. Affirmed.

*Patricia J. Parker*, assistant county counselor, for appellant Sedgwick County.

*Linda Terrill*, of Property Tax Law Group, LLC, of Overland Park, for appellee Target Corporation.

*Roger M. Theis* and *Thomas R. Powell*, of Unified School District No. 259, of Wichita, for amicus curiae U.S.D. No. 259.

*R. Scott Beeler* and *Jennifer M. Hannah*, of Lathrop Gage LLP, of Overland Park, for amicus curiae The Kansas Chamber of Commerce and Industry, Inc.

Before BRUNS, P.J., SCHROEDER, J., and HEBERT, S.J.

SCHROEDER, J.: Sedgwick County (the County) appeals the Board of Tax Appeals' (BOTA) valuation for ad valorem tax purposes of four Target Corporation

2

(Target) retail store locations. The County argues BOTA erred in determining a proper value for the property; this argument is unpersuasive. The record reflects BOTA accepted and relied upon substantial competent evidence to determine each property's value in compliance with Uniform Standards of Professional Appraisal Practice (USPAP). We affirm.

FACTS

The properties subject to this appeal consist of four retail store locations owned and occupied by Target in Sedgwick County. Target filed protest applications and sought equalization appeals based on the County's real property tax valuations for the 2015 tax year for all four locations. The four equalization appeals were consolidated for hearing before BOTA.

The County valued the subject properties at $7,475,000; $10,152,000; $10,028,000; and $7,407,000. Target valued them at $6,550,000; $8,910,000; $8,800,000; and $6,280,000. Trecia McDowell, a certified appraiser, testified as an expert witness on behalf of the County. However, McDowell was not admitted as an expert appraisal witness because she did not appraise the subject property; rather, she was admitted as a mass appraisal expert. McDowell could not explain how the County's 2015 valuations were calculated, only that they were based on settlement values for 2013 and carried over to 2014 and 2015. McDowell testified as to how the County would have valued the properties had it appraised them on January 1, 2015. She testified as to her computer assisted mass appraisal (CAMA) calculations using income and cost approach values for 2015; however, these valuations were not used. Instead, the County relied on the 2013 settlement values. McDowell could not testify as to how those values were determined. McDowell further acknowledged her CAMA valuations for 2015 were based on data lacking in both quantity and quality.

3

Gerald Maier, MAI, testified as an expert appraiser on behalf of Target. Maier inspected the interior and exterior of the subject properties; inspected documents and maps; reviewed county data relating to the properties; researched comparable land and improved sales; conducted buyer and seller interviews; conducted peer appraiser interviews; reviewed multiple property listing services; investigated internet sources; completed cost, sales, and income approach valuations of the properties; and considered market data for the City of Wichita.

BOTA found Target's evidence more compelling than the County's. It found Maier's sales and income approaches were competent approaches for valuing the properties' fee simple interest and were the best indicators of value in the record. Based on the evidence presented, BOTA valued the properties at $5,700,000; $8,910,000; $8,800,000; and $6,280,000. The County timely filed a motion for reconsideration. The Board denied the County's motion, and the County timely petitioned this court for review. Additional facts are set forth as necessary herein.

ANALYSIS

The County argues BOTA's decision was based on errors of fact and law and was otherwise arbitrary, capricious, or unreasonable. The Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq., governs appellate review of BOTA rulings. K.S.A. 2016 Supp. 74-2426(a), (c); K.S.A. 2016 Supp. 77-603(a). The KJRA delineates specific circumstances under which this court may properly grant relief:

- The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;
- The agency has erroneously interpreted or applied the law;
- The agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by

4

evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court; or

- The agency action is otherwise unreasonable, arbitrary, or capricious. K.S.A. 2016 Supp. 77-621(c)(1), (4), (7), (8).

Because the County is challenging the validity of BOTA's action, it bears the burden of proving the invalidity of the action. K.S.A. 2016 Supp. 77-621(a)(1).

To the extent this issue involves interpretation of a statute, this court's review is unlimited. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). As a general rule in construing tax statutes, provisions which impose a tax are to be construed strictly in favor of the taxpayer. *In re Tax Exemption Application of Central Illinois Public Services Co.*, 276 Kan. 612, 616, 78 P.3d 419 (2003).

*The County did not meet its burden below.*

The County raises several arguments in its brief. However, as Target points out, the County has not addressed whether it met its burden of production and persuasion before BOTA. The subject property is real property primarily used for commercial purposes; thus, the County had the burden of production and persuasion before BOTA. See K.S.A. 2016 Supp. 79-1609. The County was required to properly appraise the subject property and submit a valuation to BOTA.

"Each parcel of real property shall be appraised at its fair market value in money, the value thereof to be determined by the appraiser from actual view and inspection of the property." K.S.A. 79-501. In pertinent part, K.S.A. 2016 Supp. 79-503a states: "'Fair market value' means the amount in terms of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting for property in an open and

5

competitive market, assuming that the parties are acting without undue compulsion." Appraisals for ad valorem taxation purposes must be performed in accordance with the USPAP. K.S.A. 2016 Supp. 79-505; K.S.A. 79-506(a).

Here, the County did not base its valuations for the 2015 tax year from an actual view and inspection of the property by the appraiser; rather, its valuations were based on the 2013 tax year agreed-upon settlement values for each of the properties. K.S.A. 2014 Supp. 79-1460 provided for a two-year carryover of any valuation reduced because of an appeal. As of the date of the County's valuation—January 1, 2015—K.S.A. 2014 Supp. 79-1460 was still good law. However, the carryover provision was held unconstitutional by our Supreme Court in *Board of Johnson County Comm'rs v. Jordan*, 303 Kan. 844, 869, 370 P.3d 1170 (2016). The hearing before BOTA took place after *Jordan* was decided; therefore, the use of carryover values by the County was impermissible as a matter of law.

The County's evidence was limited to McDowell testifying as to how the County *would have* valued the properties had it appraised them on January 1, 2015. McDowell testified as to her CAMA calculations using income and cost approach values for 2015; however, these valuations were not used. Instead, the County specifically relied on the 2013 settlement values. McDowell could not testify as to how those values were determined. McDowell also testified her CAMA valuations for 2015 were based on insufficient data lacking in both quantity and quality.

Kansas law requires all appraisals to be prepared in accordance with USPAP standards. Without having personally appraised the property, McDowell cannot offer a valid opinion of value. See K.S.A. 2016 Supp. 79-501; K.S.A. 2016 Supp. 79-505. The County was required to appraise the property as of January 1, 2015, in accordance with K.S.A. 2016 Supp. 79-503a unless otherwise specified by law. K.S.A. 79-1455; see *In re Equalization Proceeding of Amoco Production Co.*, 33 Kan. App. 2d 329, 347, 102 P.3d

6

1176 (2004). The use of the 2013 settlement values was impermissible as of the date of the BOTA hearing; therefore, the County was required to reappraise the properties in accordance with the USPAP standards for the 2015 tax year. The County failed to meet its burden of production and persuasion before BOTA and did not address this issue on appeal. Its failure to do so renders its arguments suspect.

*Maier's appraisal was appropriate.*

The County makes several arguments regarding Maier's appraisal of the property, primarily regarding adjustments allegedly not made in the valuation. The County argues against Maier's sales comparison approach but failed to perform a sales comparison approach of its own. This argument is highly suspect given the County had the burden of production and persuasion before BOTA. The County asserts Maier's valuation was inconsistent with *In re Equalization Appeal of Prieb Properties*, 47 Kan. App. 2d 122, 275 P.3d 56 (2012), but fails to cite to any specific language in *Prieb* in support of its argument.

Finally, the County argues it was not necessary for Maier to apply a hypothetical condition in determining the leased fee value. It asserts Maier's hypothetical leased fee value was actually a fee simple value. This argument was explicitly rejected by BOTA when it found "the County's attempts to re-define Maier's valuation conclusions to be at odds with Maier's stated appraisal objectives and hearing testimony, as well as contrary to Kansas ad valorem tax law." The County has not acknowledged, addressed, or rebutted this finding. As the party asserting error, the County has the burden to prove BOTA erred. K.S.A. 2016 Supp. 77-621(a)(1). It has not done so.

In any event, Maier's appraisal was appropriate and complied with Kansas law. He used cost, sales, and income approaches. For his cost approach, Maier developed his land value by reviewing the sale of seven vacant lots, adjusting for conditions of sale,

7

time/market conditions, size, physical condition, zoning, and location. He developed his improvement value for the cost approach calculating replacement cost, estimating entrepreneurial profit, and calculated depreciation utilizing functional and external obsolescence.

Maier's sales comparison approach discussed three categories of sales: build-to-suit sale/leaseback sales; second-generation leased fee sales; and fee simple sales. Maier selected nine recent comparable sales of single-retailer commercial locations. He examined each sale and adjusted for time and market conditions, age and condition of the property, location, improvement size, quality and utility of the property, and investment quality. He determined the leased fee, build-to-suit sale/leaseback, and second-generation leased fee sales had a higher value than adjusted fee simple sales; therefore, he concluded the value of the investment was greater than the underlying real property. He then determined the values for fee simple and non-fee simple sales of the subject property and concluded the fee simple sale values were lower.

Maier also used an income approach analyzing market rents for the subject property. He compared first-generation leases and sales leaseback agreements and determined they were not appropriate valuation methods for market rent. He stated first-generation leases are not to be used in an income approach because "[t]he tenant pays an above market rate for a turn-key lease that provides a prototype building allowing for economies of scale in the overall company. These tenants would not be willing to pay the same rate for space designed for another retailer's use." He further noted sales leaseback agreements are increasingly used to finance nonrealty costs and are not indicative of market rent.

Maier further analyzed second-generation leases with owner-financed renovations and second-generation leases taken on an as-is basis. He noted the cost of owner-financed renovations are amortized over the term of the lease; thus, second-generation as-is leases

8

are most indicative of market rent. He analyzed nine leases, adjusting for the same conditions as his sales comparison analysis. He analyzed and accounted for expense reimbursements, vacancy, and credit loss to determine effective gross income. He forecasted expenses to arrive at net operating income. Finally, Maier developed a capitalization rate based on a review of sales of comparable big-box retail properties.

Maier's approach is consistent with the factors set forth in K.S.A. 2016 Supp. 79-503a(b), (c), (d), (e), (g), (i), and (k). His appraisal and BOTA's reliance on it were justified.

*BOTA's decision is properly supported by the record.*

The County argues BOTA's decision is not supported by substantial competent evidence in the record. Our standard of review under the KJRA is limited. Pursuant to K.S.A. 2016 Supp. 77-621(d), we must consider the record as a whole, including the relevant evidence which detracts from BOTA's findings. This court may not reweigh the evidence or engage in de novo review of an agency's factual findings. See *Herrera-Gallegos v. H & H Delivery Service, Inc.*, 42 Kan. App. 2d 360, 363, 212 P.3d 239 (2009).

The County's arguments are inconsistent with the relief it seeks on appeal. It argues Maier's appraisal did not adjust for lease-up costs or rent loss to arrive at an as-vacant value. As Target points out, lease-up costs are adjustments an appraiser would make to adjust a leased fee value to get to a fee simple value. Adjusting for lease-up expenses would result in a downward adjustment. Similarly, adjustments for rent loss would be a downward adjustment. See *In re Tax Appeal of Brocato*, 46 Kan. App. 2d 722, 731, 277 P.3d 1135 (2011). The County argues BOTA's valuations were too low but asserts it erred by not considering factors that would have further reduced the value of the property.

9

The County also argues no adjustments were made for after-sale capital expenditures. As Target points out, such an adjustment is necessarily speculative and is based on the needs of the individual buyer, not the needs or value of the market as a whole. Simply put, remodeling or improvements benefitting one buyer may not be of value to another. Maier testified it was not appropriate to consider these costs when adjusting for a sales comparison approach. The County did not do a sales comparison approach in its valuation. Accordingly, there is nothing in the record that detracts from BOTA's findings with respect to this issue.

The County also argues BOTA's valuation is not reflective of the highest and best use of the property. It acknowledges both Maier and McDowell testified the highest and best use of the property was continued use as a single-tenant retail store. Without any citation to the record, the County assumes BOTA found the highest and best use of the property was as vacant. Its argument lacks support in the record. BOTA noted Maier's use of a sales comparison approach and adjustments to determine a fee simple interest. It did not find the highest and best use of the property was as vacant.

Next, the County vaguely asserts Maier's sales comparison approach failed to account for properties that were older, distressed, deed-restricted, or in inferior locations. It only points to one such location and does not explain how this alleged error undermines BOTA's decision when viewed in light of the record as a whole. At best, the point is incidentally raised but not fully argued. A point raised incidentally in a brief and not argued therein is deemed abandoned. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013). In any event, the County is incorrect as Maier's appraisal accounted for these factors.

Finally, the County makes an argument regarding whether the as-vacant value should be listed as a hypothetical condition. Its argument is difficult to follow and not supported by pertinent authority or proper citation to the record. The County fails to

10

explain how not listing the as-vacant value of the property as a hypothetical undermines BOTA's decision. Further, the County erroneously assumes BOTA valued the properties as vacant. BOTA's valuation was based on a sales comparison and income approach that accounted for the value of the property in its current use. The Board did not value the property as though it was presently vacant. There is a difference between a vacant property and the as-vacant value of the property. A vacant property is one that is unoccupied and/or unused. The as-vacant value of the property refers to the separation of the value of the property itself from the value of the business being conducted on it—in other words, the value of the property itself if Target vacated it so another tenant could move in.

The County separately argues BOTA's decision was arbitrary, capricious, or unreasonable. Its argument centers largely on the same factual contentions regarding the hypothetical leased fee value and as-vacant value as discussed above. Its arguments are conclusory in nature and are not supported by the record. For the reasons previously discussed herein, the County has failed to demonstrate error in BOTA's order determining the value for the four properties.

*BOTA's valuations complied with USPAP Standards.*

Here, the County argues BOTA's valuations did not comply with USPAP standards, specifically USPAP Standard 6 regarding mass appraisals. BOTA's valuation was heavily premised on Maier's appraisal. Again, the County erroneously assumes Maier valued the properties as vacant. He did not. As previously discussed, Maier did an extensive cost, sales, and income analysis of the subject properties in compliance with K.S.A. 2016 Supp. 79-503a. His determination of market rent was based on the property being leased to a second-generation tenant as-is. In other words, his determination was consistent with the property being currently occupied. The County has failed to show error.

*No error of law*.

The County argues BOTA's decision was based on an error of law and should be reversed pursuant to K.S.A. 2016 Supp. 77-621(c)(4). Specifically, the County argues BOTA misapplied four decisions from other panels of this court:  *Prieb*, 47 Kan. App. 2d 122; *In re Tax Appeal of Yellow Freight System, Inc.*, 36 Kan. App. 2d 210, 137 P.3d 1051 (2006); *In re Equalization Appeal of Mumbo Jumbo*, No. 110,793, 2014 WL 4435905 (Kan. App. 2014) (unpublished opinion); and *In re Equalization Appeal of Yellow Equipment & Terminals, Inc.*, No. 107,653, 2012 WL 6634418 (Kan. App. 2012) (unpublished opinion).

The County asserts BOTA erred in applying *Prieb* when it determined the properties' values as vacant and available to lease were the best indicator of the fee simple values of the property. The County cites to the following language from *Prieb* which BOTA cited in its order:

> "'The appraiser theoretically should approach the valuation as if the property were vacant and available to be leased at market rent, recognizing the necessary adjustment for lease-up to stabilized occupancy. Although the definitions are not all consistent with this approach, in most assignments that involve a fee simple estimate for a leased property, the appraiser is seeking a value that assumes fully leased (or at a normalized occupancy level) *at market rent.*' (Emphasis added.) Lennhoff, *Fee Simple? Hardly,* The Appraisal Journal 400, 402 (Oct. 1997)." *Prieb*, 47 Kan. App. 2d at 132.

In its order, BOTA emphasized the words "were vacant and available to be leased at market rent." The County argues emphasis should be placed on the words "leased at market rent, recognizing the necessary adjustment for lease-up to stabilized occupancy." The County's argument becomes unclear, however, as it "requests the Court clarify its finding to avoid further confusion." The County argues *Prieb* should have considered additional statements from the Lenhoff article it cited. In essence, the County is either

12

arguing *Prieb* was wrongly decided or asking this court to modify, clarify, or extend its holding. The County is not truly arguing BOTA misapplied *Prieb*.

The County further argues BOTA failed to follow *Prieb*'s admonition against using commercial build-to-suit leases without a disentanglement by adjustments. The County asserts Maier's appraisal was inconsistent with *Prieb* but fails to cite to any specific language in *Prieb* in support of its proposition or fully explain the point. Further, the County's allegations about Maier's valuation methods are not supported with citation to the record. At best, the point is incidentally raised but not fully argued and not supported by appropriate citation to authority. A point raised incidentally in a brief and not argued therein is deemed abandoned. *Friedman*, 296 Kan. at 645. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 1001, 348 P.3d 602 (2015).

The County's arguments with respect to *Mumbo Jumbo*, *Yellow Equipment*, and *Yellow Freight System* are likewise improperly briefed. It does not explain how *Mumbo Jumbo* or *Yellow Equipment* apply and provides no citation to *Yellow Freight System* for the proposition asserted. Nevertheless, the distinction the County tries to draw between the phrases "vacant" and "vacant and available to be leased at market rent" is an argument that was rejected by another panel of this court in *In re Equalization Appeal of ARC Sweet Life Rosehill*, No. 113,692, 2016 WL 3856666, at *1, 15 (Kan. App. 2016) (unpublished opinion). The *ARC* panel found it was permissible to "determine the difference between the value of the property under a hypothetical vacant condition and its value as occupied in order to isolate the value of the taxable real estate separate and apart from the business being conducted on it." 2016 WL 3856666, at *15. Through its analysis and use of Maier's appraisal, BOTA's valuation process was reasonable, and BOTA did not commit an error of law.

BOTA's valuation of the four properties was in compliance with USPAP standards and was supported by substantial competent evidence.

Affirmed.