Nos. 90,663
90,664
90,665
90,666
90,667

In the Matter of the APPEAL OF SPRINT COMMUNICATIONS COMPANY, L.P., from an Order of the Division of Taxation for a Refund of Sales and Use Tax.

(101 P.3d 1239)

Opinion filed December 17, 2004.

*Mark A. Burghart*, of Alderson, Alderson, Weiler, Conklin, Burghart, & Crow, L.L.C., of Topeka, argued the cause and was on the briefs for appellant.

*David J. Dunlap*, of Legal Services Bureau, Kansas Department of Revenue, argued the cause and was on the brief for appellee.

The opinion was delivered by

LUCKERT, J.: This case involves five consolidated telecommunication cases where the Board of Tax Appeals (BOTA) upheld the Department of Revenue's (Department) denial of refund claims. Five telecommunication companies seek a refund of the sales tax paid on purchases of telecommunication equipment in Kansas during the time period of March 1994 through March 2000 of telecommunication equipment which "consists of, among other things, switches, computers, and related peripheral equipment (including repair and replacement parts and accessories)" which is "utilized either in engineering a finished telecommunications product or in controlling or measuring the process of manufacturing such a product." The refund claims are based on the manufacturing exemption contained in K.S.A. 79-3606(kk). The controversy focuses on whether the equipment was machinery and equipment utilized to manufacture tangible personal property for resale or to provide a service.

The taxpayers are Sprint Communications Company, L.P.; United Telephone Co. of Kansas; United Telephone Co. of Missouri; United Telephone Co. of Arkansas; and United Telephone Co. of Iowa (Taxpayers). It is undisputed that Taxpayers provide intrastate and interstate telecommunication services in the state of Kansas which are subject to the Kansas retailers' sales tax pursuant to K.S.A. 2003 Supp. 79-3603(b).

The designee of the Secretary of Revenue denied Taxpayers' claims for refunds of sales and use tax, and Taxpayers timely appealed to BOTA. The Department filed a motion for summary judgment with BOTA, arguing that, as a matter of law, Taxpayers' machinery and equipment did not qualify for exemption under K.S.A. 79-3606(kk) because Taxpayers do not manufacture tangible personal property for resale. Rather, Taxpayers' telecommunication product is statutorily defined as a service under K.S.A. 79-3602(k) and 79-3603(b). Taxpayers filed a response and cross-motion for summary judgment, arguing that their machinery and equipment qualifies for exemption under K.S.A. 79-3606(kk) because it is used in the process of manufacturing telecommunica-

tions, which are comprised entirely of tangible personal property—electricity.

In their response to the Department's motion for summary judgment and cross-motion for summary judgment, Taxpayers asserted the following facts:

"1. A telecommunication is similar, if not identical, to electricity in its composition. . . .

"2. The conversion of electrical signals from analog to digital and back to analog results in a physical change to tangible personal property. . . .

"3. A telecommunication is comprised entirely of electricity."

In support of these statements of fact, Taxpayers attached the affidavit of Charles Bell, a Senior Network Evolution Planner for Sprint, which stated:

"A telecommunication is comprised entirely of electricity. Sprint must convert electricity provided by its supplier from AC current to DC current in order to be able to process a call through the central office switch. The conversion from DC current to AC current takes place via a battery bank maintained at the central office switch."

The affidavit also quoted the following passage from *Southwestern Bell Tel. v. Director of Rev.*, 78 S.W.3d 763, 764-68 (Mo. 2002), as an accurate explanation of the creation of a telecommunication:

"When a person picks up a telephone, a dial tone is produced by electrical currents flowing between the telephone and the central office switch. [Footnote omitted.] Once the customer inputs the desired number, the central switch analyzes the electrical pulses or tones to determine the proper routing of the call. A separate system . . . sends out a data message, which is used by the receiving switch to determine whether the line is free or busy. The caller then hears either the familiar ring or busy signal. If the person on the receiving end picks up the telephone, a voice connection is established. The vibrations of a person's voice are converted by the telephone into an analog signal. Depending on the type of switching office, the signal remains analog as it is transmitted or is converted into a digital signal.

"An analog signal travelling over a telephone wire loses strength because of the resistance of the wires. The signal, along with any additional noises on the circuit, must be amplified to travel over long distances. If the switching office is analog, the signal is transported across the wire, amplified as necessary and then reconverted into a voice signal for the other listener.

"If the switching office is digital, the analog signal is 'sampled' at a very high rate into a digital signal. [Footnote omitted.] This signal goes through the system and is converted into a voice signal on the other end. Instead of being a sound

wave, a digital signal is transported as a package of data. Because it is digital data that can be regenerated, instead of being amplified, there is no risk of other noises being amplified with the voice data."

. . . .

". . . The listener requires that the voice be 'manufactured' into electronic impulses that can be transmitted and reproduced into an understandable replica. The end 'product' is not the same human voice, but a complete reproduction of it, with new value to a listener who could not otherwise hear or understand it. . . .

"Basic telephone service . . . [is] manufactured." 78 S.W.3d at 764-68.

The Department responded that the Taxpayers' three statements of fact were controverted and irrelevant. The Department argued that the technicalities of the telecommunications process were irrelevant to the question of law before BOTA because the Kansas Retailers' Sales Tax Act defines telecommunications as a service. Nonetheless, the Department also contested Taxpayers' factual allegations. As to Taxpayers' first and third statements that "[a] telecommunication is similar, if not identical, to electricity in its composition" and "[a] telecommunication is comprised entirely of electricity," the Department responded: "The term 'telecommunication' is a generic term describing one-way and two-way transmission of information by means of electromagnetic and/or electro-optical systems. Electricity is used in telecommunication." According to the Department, the information being conveyed and the entirety of the information transmission system and its processes cannot be described as "similar, if not identical, to electricity in composition," nor are they "comprised entirely of electricity" as alleged by Taxpayers. As to Taxpayers' second statement that "[t]he conversion of electrical signals from analog to digital and back to analog results in a physical change to tangible personal property," the Department responded: "Converting a signal 'from analog to digital and back to analog' results in no change. The signal is received as analog and is ultimately delivered as analog. And, the information carried by the signal is preserved as closely to the original as possible."

The Department also asserted additional facts in opposition to Taxpayers' cross-motion for summary judgment. The Department's additional facts related to the nature of telecommunications, the use of electrical current in telecommunication services,

the function of telecommunication services users' equipment, and the telecommunication companies' delivery of service.

On March 18, 2003, BOTA issued a 3-2 opinion in favor of the Department, ruling that Taxpayers' machinery and equipment did not qualify for the manufacturing exemption from sales tax under K.S.A. 79-3606(kk) because other provisions of the Kansas Retailers' Sales Tax Act define telecommunications as a service. BOTA also ruled that the Department's application of K.S.A. 79-3606(kk) to exclude telecommunications companies did not violate the Equal Protection Clauses of the United States and Kansas Constitutions. The two dissenting members of BOTA believed that there remained "genuine controverted mixed issues of law and fact" relating to whether telecommunications is a service or whether it involves the manufacturing of tangible personal property. The dissenters would have denied both motions for summary judgment and allowed the case to proceed to a full evidentiary hearing.

BOTA denied a timely motion for reconsideration, and Taxpayers timely appealed. Taxpayers' appeals were consolidated by the Court of Appeals, and the case was transferred to this court on its own motion pursuant to K.S.A. 20-3018(c).

### *Did BOTA Err in Determining That Appellants Were Not Eligible for the Sales Tax Exemption Under K.S.A. 79-3606(kk)?*

BOTA orders are subject to review under the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* K.S.A. 77-621 sets out the scope and standard of review. The provisions relevant to our review of the issues raised in this case restrict our granting of relief except where: "(1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied" or "(4) the agency has erroneously interpreted or applied the law." K.S.A. 77-621(c).

This court recently restated some of the principles governing appellate review of a BOTA decision, *In re Tax Appeal of Colorado Interstate Gas Co.*, 276 Kan. 672, 682-83, 79 P.3d 770 (2003):

"BOTA is a specialized agency and is considered to be the paramount taxing authority in this state. [Citation omitted.] BOTA is a specialized agency that exists

to decide taxation issues. [Citation omitted.] Its decisions are given great weight and deference when it is acting in its area of expertise. [Citation omitted.] The party challenging BOTA's decisions has the burden to prove that the action taken was erroneous. [Citation omitted.] However, if BOTA's interpretation of law is erroneous as a matter of law, appellate courts will take corrective steps. [Citation omitted.]"

In resolving Taxpayers' claim for exemption from taxes, we must also consider special principles applicable to judicial construction of tax statutes. "When construing tax statutes, statutes that impose the tax are to be construed strictly in favor of the taxpayer. Tax exemption statutes, however, are to be construed strictly in favor of imposing the tax and against allowing the exemption for one who does not clearly qualify. [Citation omitted.]" *In re Tax Exemption Application of Central Illinois Public Services Co.*, 276 Kan. 612, 616, 78 P.3d 419 (2003).

Taxpayers claim the exemption under K.S.A. 79-3606(kk), seeking refund for the time period from March 1994 through March 2000. Although the provision has been amended since 1997, the parties agree that the amendments are inapplicable. In relevant part, K.S.A. 79-3606(kk) provides:

"The following shall be exempt from the tax imposed by this act:

. . . .

"(kk) on or after January 1, 1989, all sales of machinery and equipment used directly and primarily for the purposes of manufacturing, assembling, processing, finishing, storing, warehousing or distributing articles of tangible personal property in this state intended for resale by a manufacturing or processing plant or facility or a storage, warehousing or distribution facility:

. . . .

"(2) For purposes of this subsection 'machinery and equipment used directly and primarily' shall include, but not be limited to:

. . . .

"(D) computers and related peripheral equipment that directly control or measure the manufacturing process or which are utilized for engineering of the finished product."

Taxpayers argue that their machinery and equipment are exempt from taxation under this provision because they are used primarily and directly to produce telecommunications, which should be considered tangible personal property. Taxpayers argue that, since telecommunications are comprised entirely of electricity, they should

be treated as tangible personal property in the same way as electricity. See *In re Tax Appeal of Collingwood Grain, Inc.*, 257 Kan. 237, 238, 891 P.2d 422 (1995) (finding it was undisputed that electricity is "tangible personal property" subject to the sales tax exemption pursuant to K.S.A. 79-3602[m][B]). Taxpayers seek a judicial determination that the manufacturing of telecommunications constitutes manufacturing of tangible personal property for resale as a matter of law.

The Department responds that the legislature has conclusively defined telecommunications as a service, not tangible personal property, for purposes of the Kansas Retailers' Sales Tax Act; therefore, Taxpayers' machinery and equipment cannot meet the requirements of the K.S.A. 79-3606(kk) manufacturing exemption as a matter of law. Thus, the Department contends that Taxpayers' explanation of the technicalities of the telecommunication process is immaterial and irrelevant.

K.S.A. 79-3602(k) provides that "service" means those services described in and taxed under K.S.A. 79-3603. K.S.A. 79-3603 imposes a tax "for the privilege of engaging in the business of selling tangible personal property at retail in this state *or* rendering or furnishing any of the services taxable under this act." (Emphasis added.) Subsection (b) imposes the tax on "(1) the gross receipts from intrastate telephone or telegraph *services* and (2) the gross receipts received from the sale of interstate telephone or telegraph *services*." (Emphasis added.)

BOTA relied upon these provisions in ruling that the Taxpayers did not qualify for the exemption in K.S.A. 79-3606(kk). We agree with BOTA's conclusion that the language of the Kansas Retailers' Sales Tax Act is plain and unambiguous in that it defines telecommunication services to be a service and not tangible personal property.

Further, the legislature did not reference telecommunication services in K.S.A. 79-3606(kk). Many of the various tax exemptions contained in K.S.A. 79-3606 do use the term "services." For example, K.S.A. 79-3606(m) provides an exemption for "all sales of tangible personal property which become an ingredient or component part of tangible personal property or *services* produced,

manufactured or compounded for ultimate sale at retail within or without the state of Kansas." (Emphasis added.) K.S.A. 79-3606(n) provides an exemption for "all sales of tangible personal property which is consumed in the production, manufacture, processing, mining, drilling, refining or compounding of tangible personal property, . . . [or] the providing of *services* . . . for ultimate sale at retail within or without the state of Kansas." (Emphasis added.) Clearly, the legislature knows how to draft an exemption which applies to the providing of services when it so intends.

Nonetheless, Taxpayers urged BOTA and now this court to look beyond legislative definitions to the actual process used in the creation of telecommunications. According to Taxpayers, it is undisputed that disturbances in an electric current are what form a communication signal. Because electricity is tangible personal property for sales tax purposes, telecommunications must also be tangible personal property.

The first problem with this argument is that the facts regarding the actual telecommunications process and the role of electricity were controverted; the Department believed the technicalities of the telecommunications process were irrelevant but it contested the Taxpayers' factual allegations as to how a telecommunication was created.

The second problem with Taxpayers' argument is that electricity is tangible personal property because the legislature defined it as such for purposes of the Kansas Retailers' Sales Tax Act. In *Collingwood Grain*, the case relied upon by Taxpayers, the issue was whether the sale of electricity consumed in grain elevator operations for the aeration, blending, cleaning, and drying of grain was exempt from sales tax pursuant to K.S.A. 79-3602(m)(B) and 79-3606(n). The latter provision provides for a sales tax exemption on "all sales of tangible personal property which is consumed in the production, manufacture, processing, mining, drilling, refining or compounding of tangible personal property . . . for ultimate sale at retail within or without the state of Kansas." K.S.A. 79-3606(n). K.S.A. 79-3602(m) defines "[p]roperty which is consumed" as:

"[T]angible personal property which is essential or necessary to and which is used in the actual process of and immediately consumed or dissipated in (1) the pro-

duction, manufacture, processing, mining, drilling, refining or compounding of tangible personal property . . . for sale in the regular course of business, and which is not reusable for such purposes. The following items of tangible personal property are hereby declared to be 'consumed' . . . (B) electricity, gas and water."

It was not disputed that electricity was "tangible personal property" under this provision. 257 Kan. at 238. Rather, the issue was whether the aeration, blending, cleaning, and drying of grain constituted production, manufacturing, processing, refining, or compounding for purposes of the tax exemption statute. BOTA held that to qualify for the exemption, the product need not be transformed into a substantially different product; rather, transformation into an improved marketable product was sufficient. 257 Kan. at 244. This court agreed, finding that the grain was of a different quality after the processes were performed and holding that the electricity used by the taxpayers in performing those processes was exempt from sales tax. 257 Kan. at 251-52.

Hence, all that *Collingwood Grain* instructs us is that the legislature included electricity in its definition of tangible personal property for purposes of determining what constitutes exempt "property which is consumed" under K.S.A. 79-3606(n). However, the legislature did not include telecommunications within its definition of "property which is consumed" at K.S.A. 79-3602(m)(B), nor within its definition of "tangible personal property" at K.S.A. 79-3602(f). Rather, the legislature has defined telecommunications as a service pursuant to K.S.A. 79-3602(k) and 79-3603(b).

Taxpayers urge this court to apply the same analysis as did the Minnesota Supreme Court in *Sprint v. Commissioner of Revenue*, 676 N.W.2d 656 (Minn. 2004). In *Sprint*, several telecommunication companies claimed refunds of sales taxes paid on capital equipment purchases. The companies argued that equipment used for their local exchange, wireless, and long distance services qualified for an exemption as capital equipment "used to manufacture 'tangible personal property . . . to be sold ultimately at retail.' See Minn. Stat. § 297A.01, subd. 16(a) (2000); Minn. Stat. § 297A.01, subd. 16(d)(4) (2000)." 676 N.W.2d at 657. The relevant Minnesota statute defined "tangible personal property" as "cor-

poreal personal property of any kind whatsoever." 676 N.W.2d at 657. See Minn. Stat. § 297A.01, subd. 11 (2000).

The Minnesota Supreme Court found that the telecommunications companies were eligible for the exemption because

"[their] telecommunications equipment manufactures a product by converting voice and other raw data into a form that can be conveyed, measured, sold, and is perceived by the senses. The matter is transformed, processed, refined, amplified, 'packetized,' routed, reconstructed, regenerated, and delivered into digital and optical forms in order to send sound waves, analog signals, and light pulses to the receiver. The form produced can be heard, seen, felt, and received by human senses under certain circumstances and can be precisely measured. As with electricity, telecommunications is corporeal personal property 'of any kind whatsoever' [footnote omitted] and includes all things which may be perceived by any of the bodily senses, including, but not limited to, touch, sight, hearing and, in this case, can be precisely measured, directed and delivered for use by a retail customer. Our traditional analysis and precedent would categorize this telecommunications equipment as refining or manufacturing a product 'to be sold ultimately at retail.' [Citation omitted.]" 676 N.W.2d at 663-64.

Like Minnesota, Kansas defines "tangible personal property" as "corporeal personal property." K.S.A. 79-3602(f).

While *Sprint* does support Taxpayers' argument that the creation of telecommunications constitutes the manufacturing of tangible personal property for resale, it is not binding precedent and is distinguishable because of the unique language of the Kansas Act which defines telecommunications as services.

The parties have also cited cases from other jurisdictions, including *Southwestern Bell Tel. v. Director of Rev.*, 78 S.W.3d 763, 768 (Mo. 2002) (telecommunications are intangible products that are manufactured and not tangible personal property), and *Bell Atlantic Mobile Systems, Inc., v. Com.*, 799 A.2d 902 (Pa. Commw. 2002), *aff'd* 577 Pa. 328, 845 A.2d 762 (2004) (telecommunications are tangible personal property but are not manufactured). These cases are also dependent on the language of the state tax statutes at issue and those statutes are even less comparable to the Kansas statutes than are the Minnesota statutes at issue in *Sprint*.

Our conclusion is governed by the plain and unambiguous language of the Kansas Retailers' Sales Tax Act, which defines telecommunications as a service and not tangible personal property.

Therefore, we conclude that equipment utilized in engineering a telecommunication product or in the process of controlling or measuring the telecommunication process is not exempt from sales taxation under the exemption provision of K.S.A. 79-3606(kk), which applies, in relevant part, to purchases of machinery and equipment used in the manufacture of tangible personal property.

*Did the Department of Revenue's Application of K.S.A. 79-3606(kk) to Deny Refunds Violate the Equal Protection Clauses of the Kansas and United States Constitutions?*

Next, Taxpayers argue that the Department's interpretation of K.S.A. 79-3606(kk) to deny them the exemption violates the Equal Protection Clauses of the United States and Kansas Constitutions because it treats similarly situated taxpayers differently. Specifically, Taxpayers complain that the Department allows the exemption for machinery and equipment used by electric companies to manufacture electricity. The Department denies this, claiming it allows the exemption for machinery and equipment which generates electricity but not for machinery and equipment which transmits or distributes electricity.

With regard to the Taxpayers' equal protection argument, BOTA determined that while it did not have authority to declare a statute unconstitutional, it did have authority to determine whether the Department's application of a statute was unconstitutional. However, BOTA found the Taxpayers' argument to be without merit. BOTA stated:

"The Act is clear that telecommunication services are not included in K.S.A. 79-3606(kk). Further, as the Department points out, electricity companies and telecommunication providers are treated equally. Specifically, the machinery used by electric companies in the service of delivering electricity is not exempt. See K.S.A. 79-3603(c). Consistently, the machinery used by telecommunication providers in the service of delivering information is also not exempt. As such, all delivery service machinery is taxed. Therefore, the Department's interpretation and application of K.S.A. 79-3606(kk) has not violated the constitutional rights of the Taxpayers."

The Fourteenth Amendment to the United States Constitution guarantees equal protection of the laws, and the Kansas Consti-

tution provides virtually the same protection. See *Colorado Interstate Gas Co. v. Beshears*, 271 Kan. 596, 609, 24 P.3d 113 (2001).

"If similarly situated taxpayers receive disparate treatment, the one receiving the less favorable treatment may have been denied equal protection of the law even if the taxpayer receiving the less favorable tax is taxed according to the law. [Citation omitted.] However, the taxpayer seeking to establish a violation of the Equal Protection Clause must demonstrate that his or her treatment is the result of a 'deliberately adopted system' which results in intentional systematic unequal treatment. [Citation omitted.]" *In re Tax Appeal of City of Wichita*, 274 Kan. 915, 920, 59 P.3d 336 (2002).

This court has stated the following rules with regard to its consideration of a claim that a tax statute violates equal protection:

" 'A statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court must do so. A statute must clearly violate the constitution before it may be struck down. This court not only has the authority, but also the duty, to construe a statute in such a manner that it is constitutional if the same can be done within the apparent intent of the legislature in passing the statute.' Syl. ¶ 2.

" 'Equal protection is implicated when a statute treats "arguably indistinguishable" classes of people differently. . . . ' Syl. ¶ 3.

" 'The rational basis standard (sometimes referred to as the reasonable basis test) applies to laws which result in some economic inequality. Under this standard, a law is constitutional, despite some unequal classification of citizens, if the classification bears a reasonable relationship to a valid legislative objective.' Syl. ¶ 4.

" 'The reasonable basis test is violated only if the statutory classification rests on grounds wholly irrelevant to the achievement of the State's legitimate objective. The state legislature is presumed to have acted within its constitutional power, even if the statute results in some inequality. Under the reasonable basis test, a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' Syl. ¶ 5.

" 'A plaintiff asserting the unconstitutionality of a statute under the rational basis standard has the burden to negate every conceivable basis which might support the classification.' Syl. ¶ 6.

" 'In taxation, even more than in other fields, legislatures possess the greatest freedom in classification.' Syl. ¶ 7." *In re Tax Appeal of Alsop Sand Co., Inc.*, 265 Kan. 510, 522, 962 P.2d 435 (1998) (quoting *Peden v. Kansas Dept. of Revenue*, 261 Kan. 239, 930 P.2d 1 [1996], *cert. denied* 520 U.S. 1229 [1997]).

Applying these principles, we conclude that Taxpayers have failed to establish an equal protection violation. First, as the De-

partment points out, beyond comparing electricity and telecommunications, Taxpayers have failed to demonstrate that they are similarly situated to electric companies or that they have been the victim of any "deliberately adopted system" resulting in intentional unequal treatment. Nor have Taxpayers negated every conceivable basis which might support the classification differentiating between telecommunications companies and electric companies.

The Department contends the legislative intent is clear that the tax exemption contained in K.S.A. 79-3606(kk) was intended to benefit manufacturers of goods rather than service providers. In *Alsop Sand,* this court discussed the legislative history of K.S.A. 79-3606(kk) and stated that its purpose was "to make the expense of expansion or modernization of a Kansas manufacturing plant competitive with the expense in neighboring states and . . . to assist in attracting new manufacturing plants to this state." 265 Kan. at 520. As noted by the Department, telecommunications companies are simply not the equivalent of manufacturing plants and have never been viewed as such.

Taxpayers counter that electric companies provide both the product of electricity and the service of delivery and transmission of electricity, just as telecommunications companies provide both the product of telecommunications and the service of delivery and transmission of telecommunications. However, the Department points out that these industries are, in fact, different because electric companies sell electricity to their customers for consumption whereas telecommunication companies only use electricity to deliver telecommunication services to their customers.

In conclusion, Taxpayers have failed to meet their burden of establishing an equal protection violation.

### Did BOTA *Properly Apply the Rules Applicable to Summary Judgment When it Rendered its Decision?*

As an alternative argument, Taxpayers point out that two dissenting BOTA members concluded there was insufficient evidence in the record to decide the issues in the case and that summary judgment was not appropriate. The dissenting opinion stated:

"In our opinion, neither party has provided expert testimony vis-a-vis their respective affidavits that unequivocally refutes the other parties' expert testimony on the key issues before the Board in these matters. In fact, there appear to be genuine controverted mixed issues of law and fact that preclude either party from satisfying the standards for summary judgment under K.S.A. 60-256(c), and amendments thereto. Such issues include: (1) whether telecommunications is purely a service or whether it involves the processing of tangible personal property, in whole or part; (2) whether the delivery of information via a telecommunications signal constitutes 'manufacturing' or 'processing' under K.S.A. 79-3606(kk); (3) an identification of all processes that occur during a telecommunications call and the relevance of those processes to exemption availability under K.S.A. 79-3606(kk); and, (4) the intent of the Legislature in enacting K.S.A. 79-3606(kk)."

The dissenters noted the Department's argument that telecommunications are defined as services as a matter of law, but they apparently also found persuasive the Taxpayers' electricity argument. The dissenters concluded that the issue should be resolved in a full evidentiary hearing. Taxpayers contend that this court could reach the same conclusion and reverse and remand the case to BOTA for a full evidentiary hearing.

The Department points out that, in oral argument before BOTA, both sides agreed that the dispositive issue could be determined by BOTA as a matter of law. Furthermore, Taxpayers filed a motion to stay discovery, which asserts that none of the discovery responses are needed to decide the legal issue before BOTA. The Department also contends that BOTA applied the correct standard of review in determining that telecommunications are services as a matter of law.

BOTA ruled that Taxpayers' machinery and equipment did not qualify for the manufacturing exemption from sales tax under K.S.A. 79-3606(kk) because other provisions of the Kansas Retailers' Sales Tax Act define telecommunications as a service. Because the issue before BOTA was framed as a question of law, and BOTA ruled only on that question of law, there was no need for BOTA to delve into the actual telecommunications process. Although the facts regarding the telecommunications process were controverted, those facts were irrelevant given the way BOTA resolved the legal issue. Accordingly, BOTA did not err in its application of summary judgment rules.

Affirmed.