(195 P.3d 245)

No. 98,409

IN THE MATTER OF THE APPEAL OF GRACELAND COLLEGE CENTER FOR PROFESSIONAL DEVELOPMENT AND LIFELONG LEARNING, INC., FROM ORDERS OF THE BOARD OF TAX APPEALS FOR THE STATE OF KANSAS.

Opinion filed October 31, 2008.

*David L. Rein Jr.* and *Jason A. Reschly*, of Blackwell Sanders, LLP, of Kansas City, Missouri, for appellant Graceland College Center for Professional Development and Lifelong Learning, Inc., d/b/a SkillPath.

*Michael D. Burrichter*, of Kansas Department of Revenue Legal Services Bureau, for appellee.

Before RULON, C.J., GREENE and CAPLINGER, JJ.

GREENE, J.: Graceland College Center for Professional Development and Lifelong Learning, Inc., d/b/a SkillPath (hereafter referred to as SkillPath), appeals the decision of the Board of Tax Appeals (BOTA) that SkillPath does not qualify as an "educational institution" under K.S.A. 2007 Supp. 79-3602(l) and, therefore, is not entitled to an exemption from Kansas sales tax pursuant to K.S.A. 2007 Supp. 79-3606(c). Concluding that BOTA erred in its interpretation and application of the statutes, we reverse.

## *Factual and Procedural Background*

SkillPath is a not-for-profit corporation located in Mission, Kansas, and is wholly owned by Graceland University, a liberal arts college located in Iowa. Graceland University is a member of the North Central Association of Colleges and Schools (NCA), a nongovernmental, voluntary, educational organization that accredits more than 9,000 public and private schools located primarily in the Midwest. SkillPath is not a member of the NCA.

SkillPath offers 1- to 2-day seminars throughout the United States and abroad—including Kansas—which focus on various subjects, including business management, computer technology, human resources, education, accounting, and others. SkillPath does not grant degrees, but all of the seminars are above 12th-grade level, and none of them are considered remedial in nature. The seminars are held in rented conference centers, hotels, and meeting rooms, and they are scheduled from time to time based on a projection of demand at the location, from every 4 months to every 2 years. Some of SkillPath's seminars qualify for college credit through Graceland University.

In 1999, SkillPath requested and was granted an exemption from the Kansas Retailers' Sales Tax pursuant to K.S.A. 79-3606(c) because it was an education institution. In 2004, the Kansas Depart-

ment of Revenue (KDOR) conducted a review of sales tax exemptions it had previously granted in order to ensure that those exemptions had been granted in accordance with state law. During this review, KDOR concluded that SkillPath did not qualify as an educational institution because SkillPath was not accredited by, or a member of, the NCA, a requirement that KDOR believed was prescribed by the statute. Accordingly, KDOR sent a letter to SkillPath informing it that its sale tax exemption would be revoked.

SkillPath timely appealed KDOR's decision to revoke its tax exemption, and KDOR issued a final determination upholding its initial decision. SkillPath then filed a timely notice of appeal to BOTA. After an evidentiary hearing, BOTA interpreted K.S.A. 2007 Supp. 79-3602(l) as requiring an entity to conduct regular classes at uniform intervals and provide courses of study leading to a degree in order to qualify as an educational institution. BOTA concluded that SkillPath did not conduct its classes in a regular manner; and because SkillPath was not a degree-granting institution, BOTA concluded that it did not offer courses of study. Therefore, based on these findings, BOTA concluded that SkillPath did not qualify as an educational institution under K.S.A. 2007 Supp. 79-3602(l) and, as a result, was not exempt from paying sales tax under K.S.A. 2007 Supp. 79-3606(c).

After SkillPath's petition to BOTA for reconsideration was denied, SkillPath filed a timely notice of appeal with this court.

### *Standards of Review*

BOTA orders are subject to review under the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq. In re Tax Appeal of Sprint Communications Co.*, 278 Kan. 690, 694, 101 P.3d 1239 (2004).

K.S.A. 77-621(c)(4) mandates this court to grant relief to SkillPath if the court determines that BOTA and KDOR erroneously interpreted or applied the law. "Whether an agency has erroneously interpreted or applied the law. . . is a question of law over which an appellate court's review is unlimited." *In re Tax Appeal of Scholastic Book Clubs, Inc.*, 260 Kan. 528, 536, 920 P.2d 947 (1996).

In *In re Tax Exemption Application of Central Illinois Public Services Co.*, 276 Kan. 612, 616, 78 P.3d 419 (2003), the Supreme Court stated:

"When construing tax statutes, statutes that impose the tax are to be construed strictly in favor of the taxpayer. Tax exemption statutes, however, are to be construed strictly in favor of imposing the tax and against allowing the exemption for one who does not clearly qualify. [Citation omitted.]"

Despite the need for strict construction of tax exemption statutes, strict construction does not warrant unreasonable construction. *In re Tax Application of Lietz Constr. Co.*, 273 Kan. 890, 904-05, 47 P.3d 1275 (2002).

In tax appeal matters, our review of statutory interpretation is unlimited, and we apply the same general rules as we do in other contexts. See *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77-78, 150 P.3d 892 (2007).

"The interpretation of a statute is a question of law over which [an appellate] court has unlimited review. The fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme. Ordinary words are given their ordinary meanings. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. [Citation omitted.]" 283 Kan. at 77.

Appellate courts normally give some deference to BOTA decisions:

" 'BOTA is a specialized agency and is considered to be the paramount taxing authority in this state. [Citation omitted.] BOTA is a specialized agency that exists to decide taxation issues. [Citation omitted.] Its decisions are given great weight and deference when it is acting in its area of expertise. [Citation omitted.] The party challenging BOTA's decisions has the burden to prove that the action taken was erroneous.' [Citation omitted.]" *In re Tax Appeal of Sprint*, 278 Kan. at 694-95 (quoting *In re Tax Appeal of Colorado Interstate Gas Co.*, 276 Kan. 672, 682-83, 79 P.3d 770 [2003]).

The determination of an administrative agency as to questions of law is not conclusive and, while persuasive, is not binding on the courts. *Winnebago Tribe*, 283 Kan. at 70. Although an appellate court gives deference to an agency's interpretation of a statute, the

final construction of a statute lies with the appellate court. *Coma Corporation v. Kansas Dept. of Labor*, 283 Kan. 625, 629, 154 P.3d 1080 (2007).

### Did BOTA Err in Interpreting and Applying K.S.A. 2007 Supp. 79-3602(l) for Purposes of K.S.A. 2007 Supp. 79-3606(c)?

#### The operative statutes

SkillPath argues that BOTA erred in its interpretation and application of the applicable statutes, and particularly the statutory definition of "educational institution." From 1999 to 2004, KDOR had exempted SkillPath from payment of sales tax under K.S.A. 2007 Supp. 79-3606(c), which provides the following sales shall be exempt from taxation:

"[A]ll sales of tangible personal property or services, including the renting and leasing of tangible personal property, purchased directly by a public or private elementary or secondary school or public or private nonprofit educational institution and used primarily by such school or institution for nonsectarian programs and activities provided or sponsored by such school or institution or in the erection, repair or enlargement of buildings to be used for such purposes. The exemption herein provided shall not apply to erection, construction, repair, enlargement or equipment of buildings used primarily for human habitation."

In determining whether an entity is eligible for this exemption as an "educational institution," the operative statute is K.S.A. 2007 Supp. 79-3602(l), which provides in relevant part:

" 'Educational institution' means any nonprofit school, college and university that offers education at a level above the twelfth grade, and conducts regular classes and courses of study required for accreditation by, or membership in, the North Central Association of Colleges and Schools."

This definition has not been amended since it became effective on July 1, 1998, see L. 1998, ch. 130, sec. 29(s), and our appellate courts have not had an opportunity to interpret and apply the provision.

#### The BOTA Rationale

BOTA concluded that SkillPath did not qualify for exemption, reasoning as follows:

"After examining the evidence provided both in Joint Exhibit 1 and the testimony, the Board finds that the Applicant, SkillPath, does not conduct regular classes. The classes are provided on an as needed basis and do not occur with any degree of regularity. 'Regular' as defined in *Webster's Ninth New Collegiate Dictionary* (1988) is 'recurring, attending, or functioning at fixed or uniform intervals.' The testimony of Mr. Braymer indicates that SkillPath does repeat its class offerings, but that the repetition does not occur at fixed or uniform intervals. Instead, the repetition is based on the demand for that particular class.

"Furthermore, the evidence shows that SkillPath does not have a course of study. *See also, Graceland College v. Department of Revenue* (654 N.W.2d 779, 783 (S.D. 2002). SkillPath is not a degree-granting institution. Some college credit is granted to SkillPath classes through Graceland University; however, most customers of SkillPath are not looking for a college degree. The individual classes offered generally do not lead to any ultimate conclusion outside of themselves.

"Therefore without regular classes and conducting a regular course of study, SkillPath does not meet the definition of 'educational institution.' As such it can not qualify for a sales tax exemption under K.S.A. 2005 Supp. 79-3606(c). The Board therefore finds that the Department's determination was correct that SkillPath does not qualify for an exemption from sales tax pursuant to K.S.A. 2005 Supp. 79-3606(c)."

## The Evidence Before BOTA

SkillPath initially offered the testimony of Chad Daniel Braymer, executive vice president for operations, who characterized the mission of SkillPath as "to provide lifelong learning opportunities for adults throughout the country [and] world." Braymer also generally described the course content of SkillPath. He referred to the quarterly course catalog in explaining that courses would be offered in different locations with some degree of regularity, depending on demand in each location. He also explained the relationship between Graceland University (an accredited member of the NCA) and SkillPath, including the manner and extent to which credit at Graceland University may be given for successful completion of certain courses through SkillPath.

SkillPath also offered the testimony of Dr. Kathleen Clauson, executive assistant to the president for institutional research and accreditation at Graceland University. Clauson testified that she was responsible for making sure Graceland University maintained all of its accreditations. Clauson also stated that she was a member of the NCA consultant evaluator corps, a group of individuals that

assess whether colleges and universities are meeting NCA accreditation standards. Clauson testified that as a consultant evaluator, one of her areas of expertise is determining whether the content of a particular course meets NCA standards.

With due respect to our dissenting colleague, we believe the record is quite clear that there are NCA standards for course content and that those standards were met by the courses offered by SkillPath. Formal accreditation may involve this and other elements, but the Clauson testimony clearly specifies that there are formal standards with respect to course content. As an example, Clauson testified:

"Q. Does NCA have quality standards? I mean, *are there standards that you, as an evaluator, would be looking for to insure that course work—that the course content meets NCA standards?*

"A. Yes.

. . . .

"Q. . . . With respect to those standards, *did you apply those standards* to the evaluation of the 43 classes that we're talking about?

"A. Yes, I did.

"Q. All right. And what's your opinion as to whether or not these classes met the standards with respect to course content, the courses?

"A. They did.

"Q. *That they did meet the NCA standards?*

"A. *Yes.*

"Q. And do they meet the NCA standards today?

"A. Yes." (Emphasis added.)

There is no question that Clauson, as an expert in NCA accreditation standards, was able to apply specific NCA standards to course content, separate and apart from the larger question of accreditation of the institution.

Clauson testified that Graceland University offered credit to people who participated in certain seminars put on by SkillPath and that those seminars met NCA standards. Clauson stated that Graceland University would not sacrifice its reputation or NCA accreditation by awarding credit for classes that did not meet NCA standards. In addition to reviewing the seminars that were eligible for college credit at Graceland, Clauson reviewed 43 other seminars that SkillPath offered and found that they all met the NCA's

standards for course content. Clauson stated that her conclusion was shared by another consultant evaluator who had reviewed the 43 courses.

Clauson also stated that it does not matter, under NCA accreditation standards, whether a class is taught in a 2-day session or whether it was broken up into multiple sessions over a long period of time. Furthermore, Clauson stated that whether someone can receive college credit for participating in a course does not matter; the course itself (regardless of whether credit is issued) must meet NCA standards. Regarding her conclusions in connection with eligibility for NCA accreditation of SkillPath's courses, Clauson testified:

"Q. And those conclusions again were?

"A. That Graceland . . . [SkillPath] is indeed an institution of higher learning providing the quality of learning that we need to provide.

"Q. For NCA Standards?

"A. Yes.

"Q. And specifically with respect to course content, correct?

"A. With respect to course content, yes.

"Q. All right. You're not opining to the Board that if tomorrow NCA showed up at SkillPath's doorstep, that they would give SkillPath NCA accreditation, are you?

"A. No. It's a two-year accreditation process for any institution. . . . [The] NCA would . . . send a team to SkillPath to consult with them and tell them what they [would] need to do over the two years to become accredited . . . .

"Q. And there are many different factors that that team would look at. Correct?

"A. Yes.

"Q. And what your focus has been, and your opinion to this Board has been strictly on whether the course content and the courses themselves meet the NCA standards.

"A. Correct.

"Q. And whether those classes are regularly taught, whether that meets the NCA standards. Is that correct?

"A. Right."

KDOR did not offer any evidence to contradict Clauson's testimony about the classes and courses conducted by SkillPath or whether they conform to NCA accreditation standards.

*Interpretation and Application of the Statutory Language*

KDOR interpreted the definition of "educational institution" in K.S.A. 2007 Supp. 79-3602(l) as requiring SkillPath, if it desired to

be exempt from paying sales tax, to meet four requirements: (1) offer education above the 12th grade, (2) conduct classes that are offered at set intervals, (3) offer courses of study that will lead to a degree, and (4) be accredited by, or be a member of, the NCA. We disagree; the plain language of the statute simply does not support this interpretation. For purposes of this appeal, K.S.A. 2007 Supp. 79-3602(l) states in pertinent part:

" 'Educational institution' means any nonprofit school, college and university that offers education at a level above the twelfth grade, *and* conducts regular classes and courses of study *required for* accreditation by, or membership in, the North Central Association of Colleges and Schools." (Emphasis added.)

### *Is Accreditation or Membership a Statutory Requirement?*

The plain and unambiguous language of statute clearly indicates that for an entity to qualify as an educational institution, it must meet only three requirements. First, the entity must be a nonprofit school, college, or university. Second, the institution must offer an education at a level above the 12th grade. Third, the entity must conduct regular classes and courses of study required for accreditation by, or membership in, the NCA. Stated another way, the third test is that the entity conduct regular classes and courses of study that meet NCA accreditation standards. The plain language of the statute does not require the entity itself to be accredited by, or be a member of, the NCA. Although the lack of NCA accreditation or membership was KDOR's principal basis for the sales tax exemption denial, we note that BOTA did not rely on that interpretation of the statute, and we agree with this aspect of BOTA's decision.

K.S.A. 2007 Supp. 79-3602(l) does not require an entity seeking to qualify as an educational institution to be a accredited by, or be a member of, the NCA. If the legislature sought to make NCA accreditation or membership a requirement under K.S.A. 2007 Supp. 79-3602(l), it could have simply stated in plain language that accreditation or membership was a requirement. In fact, our review of other statutes in the context of education reveals that the legislature is quite familiar with such a requirement. See K.S.A. 2007 Supp. 8-1,142(a)(3) (defining "educational institution" as any

not-for-profit independent institution of higher education *which is accredited by* the NCA); K.S.A. 2007 Supp. 72-11a03(f) (defining "accredited independent institution" as an "institution of postsecondary education" *accredited by* the NCA); K.S.A. 72-6509 (requiring Washburn University *to be a member of the NCA* in order to receive state grants); K.S.A. 2007 Supp. 74-32,120(f) (*making NCA accreditation a requirement* for a "Kansas educational institution"). We are unwilling to impose any requirement of accreditation or membership where the plain language requires something less.

### *Is the Third Statutory Requirement Subject to Divisible and Multiple Independent Elements?*

We disagree with BOTA, however, in breaking down a singular requirement and applying independent standards to the phrase "conducts regular classes and courses of study required for accreditation by, or membership in, the [NCA]" in K.S.A. 2007 Supp. 79-3602(l). This statutory phrase simply cannot be broken down into three, distinct elements. The language of the operative phrase clearly indicates that the third requirement is to be read as one unified element that an entity must meet in order to qualify as an educational institution. The question is whether the entity conducts regular classes and courses of study required for accreditation by or membership in the NCA.

The statutory focus is on the classes and courses of study conducted; if an entity's classes and course offerings meet the required NCA accreditation standards, then the entity satisfies the third requirement of K.S.A. 2007 Supp. 79-3602(l). The language of statute simply does not allow an independent determination whether an entity's classes are being conducted "regularly enough" or whether the entity's course offerings meet some other standards. The legislature, by crafting K.S.A. 2007 Supp. 79-3602(l) in the way that it did, made the NCA accreditation standards the guidelines for making such a determination. BOTA's interpretation of the statute distorts the clear language and punctuation readily found in the statute, something we are prohibited from doing. See *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007) ("When a

statute is plain and unambiguous, we do not speculate as to the legislative intent behind it and will not read the statute to add something not readily found in it.").

### Does "Regular" Imply Uniform Time Intervals for Offering Courses?

Moreover, we respectfully disagree with BOTA on its apparent interpretation of the term "regular" in this context. BOTA cited a dictionary definition which implies that the term necessarily has time implications; this definition is but one of several definitions of regular. More appropriate to this context is the principal definition of the term as "formed, built, arranged, or ordered according to some established rule, law, principle, or type" with preferred synonyms of "normal, typical, natural: regular may imply conformity to a prescribed rule, standard, or established pattern." Webster's Third New International Dictionary 1913 (1986). When the term "regular" is understood in this manner, it supports our view that the phrase "regular classes and courses of study" is modified by the phrase "required for accreditation by, or membership in, the [NCA]" in K.S.A. 2007 Supp. 79-3602(l). That is, the term "regular" simply implies that the classes or courses offered must conform to NCA accreditation standards.

This conclusion as to the term "regular" is consistent with the use of the term elsewhere in statutes from the education context. At the outset, we note that the legislature did not speak with terminology that clearly implies some time requirement or intervals as to course offerings, and it certainly could have done so by employing other language, such as "with regularity" or "on a regular basis." Instead, the term "regular" is generally employed to indicate some conformance to a norm, especially when used in statutes within the general context of education. See, *e.g.*, K.S.A. 2007 Supp. 46-1131(d)(3) (cost study for regular elementary and secondary education as required by law); K.S.A. 2007 Supp. 72-986(l)(2) (classifying eligibility for services in part based on graduation from secondary school with a regular diploma); K.S.A. 2007 Supp. 72-1111(f) (exemption from compulsory school for certain religious organizations that object to a "regular" public high school

education); K.S.A. 2007 Supp. 72-11a03(a) (classifying certain students by demonstration of ability to benefit from participation in the regular curricula of eligible postsecondary education institutions); K.S.A. 72-4159 (defining textbooks purchased by nonpublic schools as regular adopted textbooks); K.S.A. 2007 Supp. 72-4526(c) (establishing teacher authority in adult education programs as same as exercised in regular school instruction); K.S.A. 72-53,111(a) (excluding requirement for providing to some persons education in a regular school setting); K.S.A. 72-8223(b) (directing payment of tuition received from federal funds for attendance of children at school in regular educational programs). We conclude the term regular within the statutory phrase simply means that the classes and courses of study are not out of the ordinary and conform to the NCA accreditation standards.

Even if we were to adopt BOTA's interpretation of regular as relating to time or uniform intervals, the record is replete with substantial competent evidence of such "regularity." The fact that courses are offered and conducted in a manner to meet demand does not distinguish SkillPath from any other institution of higher learning. As shown by Braymer's testimony, it is undeniable that all such institutions offer specific classes, especially those relating to discrete specialties, at time intervals governed by projected or actual demand. Braymer's testimony clearly establishes regularity not unlike any other such institution; the courses are recurring in the sense they are offered and conducted at regular time intervals, although the demand may vary at different locations:

"Q. . . . How often might you repeat a class? . . .
. . . .

"A. . . . *We've got regular patterns for our classes.* Typically, those revolve around demand within the community. So say, for example, our Managing Multiple Projects course in Illinois, in Chicago, I'll be back there *approximately every three months* with that course because there's a high demand for that. Now, our Cisco router course, there's not as large a population that's interested in attending that. I might only be through there twice a year with that particular course. *In some cases the course is only coming back in one year, once a year.* So say, for example, Topeka would be a good example of a smaller market, and that market really doesn't bear having that same course back there maybe more than once a year.

. . . .

"Q. And these classes that we're looking at in this [business course catalog], are these classes that are regularly—that SkillPath regularly offers, or are they not, just infrequent?

"A. No. *These are all the classes that we regularly offer.*

. . . .

"Q. And where did you receive your degree?

"A. At Northeast Missouri State. It's now Truman State University.

. . . .

"Q. While you attended the university, were there classes that weren't offered each semester?

"A. Yes.

"Q. Were there classes that weren't offered every single year?

"A. Yes.

. . . .

"Q. As far as your competitors, when you reviewed your competitors, would you find that same situation?

"A. Yes.

"Q. All right. Would the classes that, say, Johnson County Community College or the University of Kansas offered for non degree credit, would those vary from semester to semester?

"A. Yes."

Although we respectfully differ on BOTA's interpretation of regular as used in the statute, we also conclude that BOTA's finding that SkillPath failed to offer regular classes is defied by evidence that is substantial when considered in light of the record as a whole.

### Does Phrase "Courses of Study" Imply a Pathway to Degree?

Finally, we disagree with BOTA's suggestion that the phrase "courses of study" requires the classes being offered to "lead to any ultimate conclusion outside of themselves," such as obtaining a degree. This is also not expressed or implied by the plain language of the statute. We note that numerous statutory references to courses of study do not generally imply that a degree be contemplated. See, *e.g.*, K.S.A. 2007 Supp. 44-703(v) (courses of study or training which an educational institution offers *may be academic, technical, trade, or preparation for gainful employment*); K.S.A. 71-205 (authorization for courses of study to be offered by community colleges at Fort Leavenworth); K.S.A. 72-4454 (providing for transferability of substantially equivalent courses of study); K.S.A. 72-

7513(a)(2) (powers of State Board of Education include enactment of rules and regulations for courses of study and curriculum); K.S.A. 2007 Supp. 72-8205(c) (authority of local boards of education to prescribe courses of study for each year).

In contrast, numerous statutes clearly and expressly specify that particular courses of study lead to a degree when contemplated by the legislature. See, *e.g.*, K.S.A. 65-1903; K.S.A. 2007 Supp. 65-5418(b)(9); K.S.A. 65-6511(d); K.S.A. 74-3296(a)(7); K.S.A. 74-32,136(a)(7); and K.S.A. 2007 Supp. 76-381(c)(5), all of which contain express language that require "a course of study leading to a [degree or diploma.]" Again, it would have been easy for the legislature to have required educational institutions to exclusively offer courses of study leading to a degree, but we find no such language or implication in the plain language of K.S.A. 2007 Supp. 79-3602(l). Similarly, the record establishes that SkillPath offers courses of study in business and management techniques, education and teaching techniques, technology integration, and others, and these courses were the subject of Clauson's testimony regarding conformance to NCA accreditation standards.

## Summary and Conclusion

In order for an entity to qualify as an educational institution under K.S.A. 2007 Supp. 79-3602(l), it must first establish that it is a nonprofit school, college, or university. That SkillPath is a nonprofit school was not a matter of dispute in this case; there was no challenge to its nonprofit nature, and the parties apparently agree that "school" broadly includes any institution of learning. Second, the institution must offer an education at a level above the 12th grade. This apparently also was never a matter of dispute; SkillPath put on evidence to show that all of its seminars are considered to be above a 12th-grade level, and none of them are considered remedial classes. With regard to the third requirement, the determinative question is whether Skillpath conducts regular classes and courses of study required for accreditation by, or membership in, the NCA. We believe Clauson's testimony clearly established that SkillPath offers regular classes and courses of study which conform

to the standards for accreditation required by the NCA and that her conclusion was shared by another consultant evaluator.

We acknowledge our duty to pay deference to BOTA and to construe tax exemption statutes strictly, but we cannot endorse a statutory interpretation that parses and independently assesses the phrase "regular classes and courses of study" without regard for the balance of the statutory phrase providing the precise normative standard for determining whether such classes and courses of study are indeed regular, *i.e.* those required for NCA accreditation standards. In this limited regard, we respectfully disagree with BOTA's overly restrictive interpretation of the operative statutes and conclude that SkillPath meets the criteria established for an educational institution and sales tax exemption under K.S.A. 2007 Supp. 79-3602(l) and K.S.A. 2007 Supp. 79-3606(c). For this reason, we must reverse BOTA and remand with directions to take appropriate action to reverse KDOR's revocation of SkillPath's exemption.

We acknowledge the legislative history highlighted by our dissenting colleague, and we concede that KDOR apparently desired a criteria that required accreditation. The mere desire of a proponent, however, does not conclusively establish legislative intent, and this court cannot ignore the plain language of the enactment even if it may not be what the legislature really intended to do. Here, the language of K.S.A. 2007 Supp. 79-3602(l) is not ambiguous; there is no accreditation requirement, but rather a requirement that classes and courses of study meet the standards of the accrediting authority.

" ' "[T]he court cannot delete vital provisions or supply vital omissions in a statute. No matter what the legislature may have really intended to do, *if it did not in fact do it, under any reasonable interpretation of the language used, the defect is one which the legislature alone can correct.*" ' " *Colorado Interstate Gas Co. v. Board of Morton County Comm'rs*, 247 Kan. 654, 662, 802 P.2d 584 (1990) (quoting *Harris v. Shanahan*, 192 Kan. 183, 196, 387 P.2d 771 [1963]; *Russell v. Cogswell*, 151 Kan. 793, 795, 101 P.2d 361 [1940]).

Reversed and remanded with directions.

CAPLINGER, J., dissenting: I respectfully disagree with the majority's conclusion that SkillPath, an organization which conducts 1- and 2-day seminars based upon demand in various locations

throughout our state and which is not a member of the North Central Association of Colleges and Schools (NCA), qualifies for sales tax exemption as an "educational institution" under K.S.A. 2007 Supp. 79-3602(l) and K.S.A. 2007 Supp. 79-3606(c).

*The Majority Fails to Consider the Statute's Ambiguity*

The majority interprets K.S.A. 2007 Supp. 79-3602(l) to contain three requirements for exemption as an educational institution. I do not dispute the correctness of the first two elements: (1) The entity must be a nonprofit school, college, or university, and (2) the institution must offer an education at a level above the 12th grade. However, I disagree with the majority's suggestion that the "plain language" of the statute permits an institution like SkillPath to qualify for sales tax exemption without accreditation under the NCA. Rather, according to the majority, the institution must simply "conduct regular classes and courses of study *that meet NCA accreditation standards.*" (Emphasis added.) 40 Kan. App. 2d at 673.

The flaw in the majority's conclusion is that it ignores the ambiguity in the statute. As both parties concede, the NCA does not accredit individual *courses* based on content, regularity of classes, or any other particular characteristic. Rather, the NCA accredits *institutions*—a complex and lengthy process that, according to the materials submitted by SkillPath, requires the school to demonstrate five major criteria for accreditation: (1) development of a multifaceted school improvement plan; (2) development of an assessment-driven and comprehensive information system for collecting, monitoring, and analyzing information on students as they enter, progress, and exit the school, and a description of how student achievement and school effectiveness data is collected and analyzed; (3) a description of the "process of schooling," including the process for curriculum development, review and revision, and the assessment system used by the school including information on classroom and standardized measures; (4) a description of how the school involves the community and communicates with the community regarding its goals and programs; and (5) a description of the school's (a) physical resources, including space, facilities, environment, and personnel; (b) financial resources, including its

funding, budgeting and auditing procedures, and the storing of permanent records; and (c) instructional resources, including the quantity and range of instructional media and technology available to the students and faculty. Once the school has completed its extensive application, an on-site visit or audit is conducted by the NCA.

Even Dr. Kathleen Clauson, who testified on behalf of SkillPath regarding NCA requirements, recognized that NCA accredits only institutions, not courses or programs and that this process is often a lengthy one, requiring several site visits and ongoing evaluations. The majority points out that Clauson testified regarding specific "course content" standards, but it neglects to mention that Clauson clearly did not suggest that NCA has ever evaluated an institution's course content separate or apart from the entire accreditation process. In fact, Clauson specifically testified that as an NCA evaluator, she evaluates course content only as "part of" the overall assessment of the university or institution seeking accreditation.

Clearly, K.S.A. 2007 Supp. 79-3602(l) refers to "regular classes and courses of study required for [NCA] *accreditation* . . . ." (Emphasis added.) Clauson implicitly recognized this when she pointed out that the NCA encourages institutions that are *already accredited* (like Graceland, SkillPath's parent entity) to enhance their institutions by adding programs, such as those offered by SkillPath, that reach out to nontraditional students and members of the "global community." That does not change the fact, however, that the NCA does not accredit individual courses and SkillPath, as a *stand-alone entity, is not* accredited by the NCA.

Thus, contrary to the majority's suggestion, the content of individual classes is not considered in a vacuum by the NCA. Rather, courses and course content are considered, along with other extensive information regarding the institution, in determining whether the institution may be accredited by the NCA. Thus, I would find the legislature's use of the phrase "regular classes and courses of study required for accreditation by, or membership in the [NCA]" in K.S.A. 2007 Supp. 79-3602(l) to be ambiguous. And because the phrase is ambiguous, we look to legislative history to interpret its meaning. See *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d

1025 (2007) (if a statute is unclear or ambiguous, courts apply canons of construction or rely on legislative history construing the statute to effect the legislature's intent).

*The Legislative History of the Statute Clarifies the Legislature's Intent*

The legislative history of K.S.A. 2007 Supp. 79-3602(l) confirms that the legislature's intent was to require that an educational institution be accredited by the NCA in order to obtain tax exempt status under the statute.

Senate Bill 250, which defined "educational institutions," was proposed in 1997 by the Kansas Department of Revenue (KDOR). The bill defined an educational institution to mean:

"[A]ny school, college and university that offers education at a level above the twelfth grade, and conducts regular classes and courses of study required for accreditation by, or membership in, the North Central Association of Colleges and Schools, the state board of education, or that otherwise qualify as an 'educational institution,' as defined by K.S.A. 74-50,103, and amendments thereto. Such phrase shall include: (1) A group of educational institutions that operates exclusively for an educational purpose; (2) nonprofit endowment associations and foundations organized and operated exclusively to receive, hold, invest and administer moneys and property as a permanent fund for the support and sole benefit of an educational institution; and (3) nonprofit entities, including but not limited to, trusts and foundations, organized and operated to hold and own receipts from intercollegiate sporting events and to disburse such receipts, as well as grants and gifts, in the interest of collegiate and intercollegiate athletic programs." S.B. 250, sec. 1(s) (1997).

Significantly, KDOR's Director of Policy and Research, Shirley Sicilian, testified before the Senate Committee on Assessment and Taxation and clearly stated the bill was intended to define educational institutions to include "post-secondary schools *that are accredited*" by the NCA. (Emphasis added.) See Minutes, Sen. Comm. on Assessment and Taxation, February 17, 1997 (S.B. 250).

Although Senate Bill 250 was favorably reported by the committee, it was eventually withdrawn from the calendar and re-referred to the committee. See Sen. J. 1997, p. 785. In 1998, Sicilian again testified before the committee. When questioned as to why the bill was needed, she explained that KDOR "often received

questions regarding the interpretation of 'educational institution' in the sales tax statutes" and because "there is no definition in the sales tax statutes, the [KDOR] is forced to look to other statutes for a definition. Therefore, this bill is needed to clarify the sales tax statutes." Minutes, Sen. Comm. on Assessment and Taxation, January 15, 1998 (S.B. 250).

In the House Committee on Taxation, Kansas Board of Regents General Counsel Joseph Barron testified that the purpose of Senate Bill 250 was to clarify the tax exempt status of affiliated corporations of universities that had historically been exempt from sales tax, including athletic, research, and endowment associations and student unions, and to "eliminate any disparity of treatment among campuses undertaking the same activities." Minutes, House Comm. on Taxation, March 19, 1998 (S.B. 250), attach. 3.

A memorandum to House Committee on Taxation Chair Phill Kline from Sicilian, dated March 19, 1998, again stated that Senate Bill 250 defines educational institutions to include "nonprofit post-secondary schools *accredited by the North Central Association of Colleges and Schools*, the Board of Education, or otherwise qualifying as 'educational institutions' under K.S.A. 74-50,103." (Emphasis added.) Minutes, House Comm. on Taxation, March 19, 1998 (S.B. 250), attach. 2-1.

The language of amended Senate Bill 250 was eventually included in Senate Bill 493, which was passed by both houses and signed into law by the governor in 1998. See L. 1998, ch. 130, sec. 29(s).

Thus, a review of the history of the statute reveals that the clear purpose of the amendment was to clarify the treatment of organizations affiliated with universities, including athletic and endowment associations. There is simply no indication that the bill was intended to permit institutions not accredited by the NCA to obtain tax exempt status. Instead, the legislative history verifies that KDOR, which proposed the legislation, intended that it apply to NCA "accredited institutions."

Moreover, the majority's interpretation of the statute to require sales tax exemption for institutions which "conduct regular classes and courses of study *that meet NCA accreditation standards*"

places KDOR or, ultimately, BOTA in the untenable position of evaluating course content of all institutions seeking sales tax exemption to determine whether their courses "meet NCA accreditation standards." This is an unreasonable and unworkable result that clearly was not anticipated or intended by the legislature. See *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 458, 691 P.2d 1303 (1984) (in determining legislative intent, courts are not limited to mere consideration of the statutory language employed and may properly look to the purpose to be accomplished and the effect the statute may have under various constructions suggested).

*The Majority's Interpretation of the Statute Fails to Give Due Deference to the Agency*

Even if the majority correctly concluded that K.S.A. 2007 Supp. 79-3602(l) requires KDOR and BOTA to evaluate every application seeking sales tax exemption under the statute to determine the content of courses and whether they "meet NCA standards," I would nevertheless uphold BOTA's determination that the courses taught by SkillPath do not qualify under the statute.

*(1) BOTA's definition of "regular"*

Applying a definition of "regular" which makes sense when applied in the educational context, BOTA found SkillPath's classes were not regular. Specifically, BOTA defined "regular" as "recurring, attending, or functioning at fixed or uniform intervals." See Webster's Ninth New Collegiate Dictionary 992 (1991).

SkillPath's witness, Chad Braymer, testified that "what determines" where and when a course is offered is "how many people are interested in that course." Further, Braymer "measures" demand by "attempting a course" in a particular location. Thus, BOTA found that while SkillPath occasionally repeats its class offerings in some cities, that repetition is based upon demand for the class in a particular geographic area. BOTA concluded that the occasional repetition of a course in some cities based upon demand does not constitute regular classes as defined in the statute.

Despite the Board's logical interpretation of the adjective regular as used to modify classes, and its specific factual finding that

SkillPath's courses did not meet this definition, the majority suggests that the legislature "should have" employed the phrase "with regularity" to better express its intent. The majority then concludes, based upon a review of other statutes, that "regular," as it is used in K.S.A. 2007 Supp. 79-3602(l), "simply means the classes and courses of study are not out of the ordinary and conform to NCA accreditation standards." 40 Kan. App. 2d at 676.

The majority's reliance on other statutes to define the term "regular" in this statute is curious, in light of the legislature's purpose in enacting the statutory definition of "educational institution." As discussed above, that definition was proposed by KDOR because there was no definition of that term in the sales tax statutes and KDOR no longer wanted to be "forced" to look to other statutes for a definition.

Moreover, the majority's decision fails to give any deference—much less "great judicial deference"—to BOTA, as we are required to do. See *Denning v. KPERS*, 285 Kan. 1045, 1048, 180 P.3d 564 (2008) (administrative agency's legal interpretation of a statute that the agency is authorized to enforce is generally entitled to great judicial deference). Nor does it apply the general rule that we must construe tax exemption statutes strictly in favor of imposing tax and against allowance of exemption for one who does not clearly qualify. See *Kansas Krude Oil Reclaiming Co.*, 236 Kan. at 454. Instead, the majority has simply substituted its view regarding the meaning of the phrase "regular classes" for BOTA's view.

The majority also suggests that even if this court were to adopt BOTA's definition of regular, SkillPath's occasional repetition of some courses in some cities across the nation would meet that definition. The majority cites Braymer's testimony that SkillPath offers one particular course "approximately every three months" in Chicago based upon demand, but that same course in Topeka would not be offered "maybe [no] more than once a year" based upon lower demand. Again, I think the majority's rationale fails to give any deference to BOTA's interpretation of the term "regular" with respect to courses offered by an education institution.

BOTA defined "regular" as "recurring, attending, or functioning at fixed or uniform intervals." The testimony cited by the majority

only reinforces BOTA's finding that SkillPath's course offerings are anything but regular under this definition. Instead, the courses are entirely based upon demand in a particular location. While SkillPath might offer one course three times a year in one city, that same course might be offered once a year or less in another city. Importantly, SkillPath's class schedule is not set in advance; it is determined based upon demand in each location.

Therefore, I would conclude that if we appropriately give deference to BOTA's definition of the term "regular," the testimony supports BOTA's conclusion that SkillPath does not offer regular classes and does not qualify for sales tax exemption as an educational institution under K.S.A. 2007 Supp. 79-3602(l) and K.S.A. 2007 Supp. 79-3606(c).

*(2) BOTA's definition of "courses of study"*

I would also find the majority fails to give deference to BOTA's definition of the phrase "courses of study" in the statute. BOTA concluded SkillPath does not offer courses of study because "most customers of SkillPath are not looking for a college degree" and the "individual classes offered generally do not lead to any ultimate conclusion outside of themselves."

Again, the majority has looked to other statutes to determine that courses of study as used in K.S.A. 2007 Supp. 79-3602(l) does not include a requirement that the courses of study lead to a degree, as BOTA found. I would give judicial deference to BOTA's definition of the phrase "course of study," particularly when, as here, that phrase is connected to a reference to NCA accreditation. As discussed above, NCA accreditation clearly requires that an educational institution provide courses of study leading to a degree in order to be accredited.

In summary, I would affirm BOTA because: (1) The majority's reversal of BOTA does not recognize the ambiguity of the statute regarding the reference to NCA accreditation or consider the legislative history of the statute in resolving that ambiguity; and (2) the majority's decision fails to give due deference to BOTA's interpretation of the statute.